In re ANNEXATION OF 343.2255 ACRES FROM SYMMES TOWNSHIP.*

[Cite as *In re Annexation of 343.2255 Acres from Symmes Twp.* (1995), 106 Ohio App.3d 512.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA95–01–006.

Decided Sept. 25, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 74 Ohio St.3d 1513, 659 N.E.2d 1289.

*Shuler, Plank, Morgan & Brahm* and *Richard C. Brahm,* for appellant, petitioners' agent William Duning.

*Gray, Duning & Dunlap* and *J. William Duning,* for appellants, annexation petitioners.

*William D. Forbes,* for appellee, Deerfield Township Board of Trustees.

*Moots, Cope & Stanton* and *Elizabeth M. Stanton,* for appellee, Symmes Township Board of Trustees.

---

WILLIAM W. YOUNG, Judge.

Appellants, annexation petitioners and their agent, William Duning, appeal a Warren County Common Pleas Court order affirming the denial of their annexation petition.

In January 1993, appellants filed a petition with the Warren County Board of Commissioners (the "Board") to annex 343.2255 acres to the city of Loveland, Ohio. The proposed territory included approximately one hundred twenty-two acres in Symmes Township, Hamilton County, Ohio, and two hundred twenty-one acres in Deerfield Township, Warren County, Ohio. Nineteen of thirty-three property owners in the proposed territory, owning approximately a third of the total acreage, signed the annexation petition. The Board held public hearings on the petition beginning April 27, 1993 and continuing on May 26, July 7, July 29, and August 30, 1993. The Board denied the annexation petition on December 7, 1993.

Appellants appealed the Board's decision to the Warren County Common Pleas Court pursuant to R.C. Chapter 2506. That court affirmed the Board's decision on December 29, 1994.

As their first assignment of error, appellants assert that the common pleas court erred by affirming the Board's decision finding that annexation would not serve the general good of the annexation territory. Appellants claim that the Board should have limited its inquiry to consideration of only two factors when determining the "general good" issue: whether a majority of property owners signed the annexation petition, and whether the municipality could deliver "an adequate and acceptable level of service." In support, appellants cite this court's decision in *Bailey v. Bd. of Cty. Commrs.* (Nov. 30, 1984), Warren App. No. CA84–03–022, unreported, 1984 WL 3664. Appellants' reliance on *Bailey* is misplaced.

■■ R.C. 709.033 directs the ultimate focus of annexation proceedings on the general good of the proposed territory. See *Lariccia v. Mahoning Cty. Bd. of Commrs.* (1974), 38 Ohio St.2d 99, 67 O.O.2d 97, 310 N.E.2d 257. Majority approval for annexation by the property owners within the annexation territory is a prerequisite to trigger a hearing before the county board of commissioners. R.C. 709.033(C). Moreover, where all owners within a given tract support annexation, this fact alone is strong evidence that annexation will serve the

general good of that area. *In re Annexation of 114.031 Acres from Hamilton Twp.* (May 1, 1995), Warren App. No. CA94–11–092, unreported, at 6, 1995 WL 249989, citing *In re Char* (1978), 59 Ohio App.2d 146, 150, 13 O.O.3d 185, 187–188, 392 N.E.2d 1312, 1315.

However, "the general good of the territory sought to be annexed" is not synonymous with whether a simple majority have signed an annexation petition. *In re Annexation of 948.885 Acres* (Sept. 11, 1995), Butler App. No. CA95–01–019, unreported, 1995 WL 540422. If the General Assembly were interested only in whether most property owners within a given tract signed a petition, it would not have provided for a hearing to determine whether annexation serves the general good of that territory. Significantly, in *Bailey* this court emphasized that "no property owner in the area sought to be annexed opposed annexation." See *In re Annexation of 131.983 Acres* (July 7, 1995), Miami App. No. 94–CA–15, unreported, 1995 WL 418694 (court distinguished *Bailey* because property owner within the annexation territory opposed annexation and offered conflicting evidence on the provision of services).

This court has also rejected any suggestion that the only focus of " 'general good' analysis" is whether the annexing municipality can provide an "adequate level of service." *In re Annexation of 114.031, supra,* Warren App. No. CA94–11–092, explaining *Bailey*. The court should also consider services available to the territory before annexation. *Id.* There is no way to decide whether an annexing municipality can provide "an adequate level of service" without some basis or standard for comparison. The most logical basis for comparison is with services available to the territory before annexation. Comparative analysis of the services competing jurisdictions can provide to the annexation territory may take on special importance where support for annexation within the territory is closely divided.

In its general good analysis, the lower court looked at several factors considered by the Board: (1) fire protection, (2) zoning and property value considerations, (3) water and sewer services, (4) police coverage, (5) road maintenance, (6) whether the territory was unreasonably large, (7) the effect of annexation on the remaining township property, and (8) contiguity of the territory with the city.

The common pleas court agreed with the Board that the city of Loveland could not provide the same level of fire protection currently available to the proposed territory. The Mason Volunteer Fire Company (the "MVFC") currently serves that portion of the annexation territory in Deerfield Township. The Loveland/Symmes Fire Department (the "LSFD") provides coverage for Loveland and that portion of the territory in Symmes Township.

Glenn Alexander, a fire service consultant, considered the impact of annexation on fire protection in the territory and prepared a report comparing the two fire companies. Alexander reported that the MVFC provided sufficient fire protection to the area within Deerfield Township. However, he determined that the LSFD could not provide adequate service to the entire annexation territory. Alexander concluded that annexation would adversely affect the annexation territory.

Appellants question Alexander's competence and challenge his conclusions. However, this court has reviewed Alexander's credentials and his report. The Board properly found him to be a competent, credible expert witness. This court has thoroughly reviewed his report in light of appellants' conflicting evidence and criticism. Recognizing that the weight of the evidence and the credibility of witnesses is for the trier of fact, this court concludes that neither the Board nor the lower court abused its discretion in relying on Alexander's conclusion that the LSFD could not provide adequate fire protection to the annexation territory.

Appellants suggest in their brief that the city would not detach any portion of the annexation territory from Deerfield Township. Appellants argue that the portion of the annexation territory remaining in that township would receive primary coverage by two fire companies—the MVFC and the LSFD. However, the record simply does not support this contention. Appellants fail to cite any real evidence that the city would not remove the area from Deerfield Township after the annexation. Moreover, appellants base their argument on a contract specifying that the MVFC would provide coverage to all of Deerfield Township. That contract was for a one-year period between January 1, 1992 to December 31, 1992 and specified that either party could terminate the agreement upon thirty days' notice. Appellants' argument assumes that the parties to the contract will continue to renew it under the same terms in effect in 1992.

Even if part of the territory received dual coverage, the Board noted that the territory would then be simultaneously subject to the jurisdiction, taxes and service levies of two political subdivisions. The court also noted that it was likely that such a situation would create a "confusion of the services."

The court also found that a preponderance of evidence supported the Board's finding that police service to the territory would decline after annexation. The Warren County Sheriff's Department provides police service to Deerfield Township. The Hamilton County Sheriff's Department provides service to Symmes Township. Loveland has its own police department.

Appellants introduced simple statistical evidence that Loveland has more patrol officers per square mile and per capita than either Deerfield or Symmes Township. However, appellants did not address the impact of annexation on city resources or its ability to patrol the annexation territory.

On the other hand, Captain Arthur Reid of the Hamilton County Sheriff's office offered detailed information regarding the police services his office provides to the annexation territory. Captain Reid noted that Hamilton County's District Three Headquarters is less than a mile from the southern portion of the territory; the closest Loveland police station is four miles away. Captain Reid believed that the sheriff's office could respond to the territory more quickly than the Loveland Police Department. He offered his opinion that Loveland's thirteen full-time officers could not adequately patrol the annexation territory. The Warren County Sheriff District Three Headquarters, located on the northern border of the territory, is also much closer to the annexation territory than the nearest Loveland police station.

The lower court agreed with the Board that the territory would receive inferior road service if the Board approved the annexation. The city resolved to fully service the annexation territory; however, the common pleas court cited evidence suggesting that the city did not have the resources to properly maintain the 4.3 miles of roadway in the territory. The court specifically cited the fact that Loveland voters failed to pass road maintenance and improvement levies in 1986, 1989 and 1990.

The common pleas court agreed with most but not all of the Board's conclusions. The parties introduced conflicting evidence regarding the possibility of rezoning portions of the territory after annexation and resulting increases in property values. Much of the evidence was conjectural. Several owners in the northern portion of the territory testified that they appreciated the fact that Loveland created a nonbinding conceptual zoning plan. Opponents of annexation pointed out that the city could not guarantee that any portion of the territory would ever be rezoned. The court, "deferring to the wishes of the majority of landowners within the territory sought to be annexed, [found] a lack of a preponderance of substantial, reliable and probative evidence that annexation would not benefit zoning and/or property values."

The trial court also deferred to the wishes of the majority and found "there is not a preponderance of substantial, reliable and probative evidence to reach a conclusion against the proponents [as far as water and sewer services were concerned]." If annexed to Loveland, property owners in the Deerfield portion of the territory would receive water and sewer services from the Hamilton County Metropolitan Sewer District. Several property owners in that area testified that lower water rates and the possibility of not paying for potential sewer line development until after completion was an advantage of annexation.

It is clear to this court that the lower court carefully examined the entire record in reviewing and weighing the evidence. Appellants complain that the lower court should not prevent annexation simply because the annexing munici-

pality does not offer superior services in every possible category. We agree. Appellants then ask: "Who ultimately decides whether a specific service to the area constitutes an acceptable benefit or detriment—the property owners who receive the service or the township trustees who oppose annexation and the county commissioners?" The answer, of course, is that the General Assembly has authorized the county commissioners to make that judgment.

Here, support for the annexation petition was far from unanimous. Nearly forty-five percent of the property owners in the territory did not sign the annexation petition. Several of these property owners actively opposed annexation. Under these circumstances, the Board had no alternative but to consider and balance *all* of the evidence. It could not simply rely on the fact that a simple majority of property owners in the territory signed the annexation petition. The record supports the Board's conclusion that this annexation would not serve the general good of the area sought to be annexed. The common pleas court's decision affirming that finding was not an abuse of discretion. Appellants' first assignment of error is overruled.

■ The common pleas court also affirmed the Board's findings that the annexation territory was unreasonably large and not sufficiently contiguous with the city. Appellants challenge these findings under their second and third assignments of error. Appellants' second assignment of error contends that the common pleas court erred in upholding the Board's finding that the annexation territory was unreasonably large. Finally, appellants assert in their third assignment of error that the common pleas court erred in affirming the Board's finding that the annexation territory was not sufficiently contiguous with the city. This court will address both assignments of error together.

The common pleas court described the annexation territory and the city of Loveland in its decision. The city is approximately four square miles in area. This annexation would have increased the size of the city by 13.4 percent. The bulk of the city runs with greater distance from east to west. A "peninsula" on the northwest corner of the city juts northward into Symmes Township. The proposed annexation touches this peninsula at two points and extends further northward. The territory is adjacent to the city for a total of approximately one thousand one hundred feet. The annexation would create an "island" between the two points where the territory meets the city, separating that area from the remainder of Symmes Township.

■ A county board of commissioners cannot approve an annexation petition if it concludes that the annexation territory is "unreasonably large." R.C. 709.033(E). This court has considered three factors relevant to that determination: (1) the geographic character, shape and size of the annexation territory in

relation to both the annexing municipality and the territory remaining after the annexation is completed, (2) the ability of the annexing municipality to provide necessary municipal services to the added territory, and (3) the effect on remaining township territory. *Finkelman v. Franklin Twp. Trustees* (Dec. 12, 1994), Warren App. No. CA94–06–051, unreported, 1994 WL 695474, citing *In re Annexation of 1,544.61 Acres in Northampton Twp.* (1984), 14 Ohio App.3d 231, 233, 14 OBR 259, 261–262, 470 N.E.2d 486, 489–490.

R.C. 709.02, referred to in R.C. 709.033(A), requires that territory sought to be annexed to a municipal corporation be "adjacent to" the municipality. Some courts call this the "contiguity requirement." See *Middletown v. McGee* (1988), 39 Ohio St.3d 284, 287, 530 N.E.2d 902, 905.

The common pleas court affirmed the Board's finding that the territory was not sufficiently contiguous with the city; however, the court recognized that "that concept [of contiguity] is nebulous at best." The court noted that the issue of contiguity is interrelated with the geographic character, size and shape of the annexation territory and the annexing municipality. This is an important factor in determining whether the proposed territory is unreasonably large. The common pleas court did not explicitly hold that the annexation territory here was not sufficiently contiguous with the city to satisfy the requirement under R.C. 709.02 that it be "adjacent to" the city. This court expresses no opinion on that issue. However, the court properly considered the fact that the annexation territory was only contiguous with the city for one thousand one hundred feet; that was a relevant consideration in examining the geographic character and shape of the territory compared to the city.

█ Appellants argue that the common pleas court determined that the annexation area was unreasonably large simply because it created an "island." Appellants mischaracterize the court's decision. The court recognized that the existence of "islands" after annexation will not defeat an annexation petition if the decision to create the islands was not unreasonable. See *In re Appeal of Jefferson Twp. Bd. of Trustees* (1992), 78 Ohio App.3d 493, 499, 605 N.E.2d 435, 439. The lower court, however, concluded that the creation of the island in this case was in fact unreasonable.

Twenty-six property owners within the "island" submitted affidavits opposing the annexation. The common pleas court noted that the inclusion of these owners would have prevented annexation proponents from obtaining a majority of signatures from property owners. Moreover, all but three owners in the southern two thirds of the proposed territory refused to sign the annexation petition. Thus, the lower court inferred that annexation proponents extended the territory northward to garner more signatures. The court concluded "that there was a preponderance of substantial, reliable and probative evidence to support the

conclusion that the creation of this island was arbitrary in the sense that it was orchestrated to attain a majority and necessitated an elongation of the area to be annexed."

The common pleas court approved the Board's conclusion that the territory was unreasonably large after considering the geographic character, size and shape of the territory compared with the city. We also note that the court had previously concluded that the city was unable to match many services already available to the territory. The record supported the Board's finding that the annexation territory was unreasonably large. The common pleas court properly reviewed the evidence and, therefore, the court's decision affirming the Board's finding in that regard was not an abuse of discretion. Appellants' second and third assignments of error are overruled.

■ The common pleas court had to determine whether a preponderance of reliable, probative and substantial evidence supported the Board's decision to deny appellants' petition. R.C. 2506.04. This court's function on appeal is limited to determining whether that court abused its discretion in making that judgment. See *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 29–30, 465 N.E.2d 848, 852, fn. 4; *In re Wolfe* (1992), 82 Ohio App.3d 675, 683–684, 612 N.E.2d 1307, 1313. We are convinced that the Board and the lower court properly considered and weighed all of the evidence in this case. After thoroughly reviewing the record, this court concludes that the common pleas court did not abuse its discretion in affirming the Board's decision to deny appellants' annexation petition.

*Judgment affirmed.*

WALSH, P.J., and POWELL, J., concur.