**In re PETITION TO ANNEX 95 ACRES TO NELSONVILLE.**

Court of Common Pleas of Ohio,
Athens County.

No. 96CI000350.

Decided March 7, 1997.

*Paul J. Gerig*, for plaintiffs Charles E. Townsend et al.

*Garry E. Hunter*, for defendants Steve Cox, Nelsonville City Auditor, et al.

MICHAEL WARD, Judge.

## STATEMENT OF FACTS AND THE CASE

The city of Nelsonville, by its duly authorized officials, officers, and agents, prepared a petition for annexation (Petition # 1), circulated the petition for signatures, and filed it on or about May 20, 1996, with the Athens County Commissioners ("commissioners"). Petitioners Cheryl McKnight Winegardner et al. requested that ninety acres, more or less, of unincorporated York Township land be annexed to the city of Nelsonville.

On August 5, a petition (Petition # 2) seeking the annexation of forty-five acres of unincorporated York Township land to the village of Buchtel was filed by Charles E. Townsend et al. with the commissioners. Petition # 1 and Petition # 2 are incompatible in that they contain, in part, the same real estate.

On August 6, the commissioners conducted a public hearing regarding Petition # 1.

On September 10, the commissioners decided to grant Petition # 1 without having yet conducted a hearing on Petition # 2.

On November 21, plaintiffs filed herein a "Petition * * * to Enjoin Nelsonville City Auditor from Presenting Annexation Petition and Other Papers to Nelsonville Council, to Prevent Nelsonville Council from Taking Action Thereon, Appealing Decision of Commissioners, and Requesting a Stay of Execution While this Matter is Pending (R.C. 709.07)."

On November 22, the court conducted a chambers status conference regarding the issues pending before the court.

On December 4, a hearing was conducted on the plaintiffs' request for an order granting stay of execution.

On December 6, the court issued its decision on the plaintiffs' motion for stay. In the journal entry, the court ordered that any further action by the city of Nelsonville, or its officers, agents, or employees to accept or act upon the annexation proceedings submitted by the commissioners be stayed pending a hearing and disposition of plaintiffs' petition for injunction and that plaintiffs not be required to post bond.

The final hearing on the motion for injunction, as agreed to by counsel, was scheduled for January 3, 1997. However, on December 31, the parties agreed that the hearing on plaintiff's petition for injunction would be continued to January 10.

On January 8, the parties filed a stipulation of facts and agreed to waive the January 10 hearing. The parties also agreed to dates for submitting post-hearing briefs.

On January 24, the parties submitted post-hearing briefs.

On January 31, the plaintiffs filed a reply brief.

### DISCUSSION OF LAW

R.C. 709.07(D) describes the burden of proof for the plaintiffs in their petition for injunction:

"(D) The petition for injunction shall be dismissed unless the court finds the petitioner has shown by clear and convincing evidence that the annexation would adversely affect the legal rights or interests of the petitioner, and that:

"(1) There was error in the proceedings before the board of county commissioners pursuant to section 709.032 or 709.033 of the Revised Code, or that the board's decision was unreasonable or unlawful; or

"(2) There was error in the findings of the board of county commissioners."

■ "Clear and convincing evidence" is evidence which will provide in the mind of the factfinder a firm belief or conviction as to the facts sought to be established. *Cincinnati Bar Assn. v. Massengale* (1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222, 1222–1223. It is a higher degree of proof than a mere "preponderance of evidence," the usual standard for civil cases, but it is less stringent than the "beyond a reasonable doubt" standard employed in criminal cases. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60–61.

■ The commissioners are charged with the duty of finding the facts and determining whether the prerequisites for annexation listed in R.C. 709.033 have been met. See *Lariccia v. Mahoning Cty. Bd. of Commrs.* (1974), 38 Ohio St.2d 99, 67 O.O.2d 97, 310 N.E.2d 257. Generally, the commissioners' findings should be disturbed only if found to be "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." See *Middletown v. McGee* (1988), 39 Ohio St.3d 284, 288, 530 N.E.2d 902, 906.

Because it is the plaintiffs' burden to point out and establish error in the proceedings below, this court will confine its review to the five alleged infirmities asserted by the plaintiffs.

## PLAINTIFFS' ASSIGNMENTS OF ERROR

### 1. THE PETITION DID NOT HAVE A MAJORITY OF VALID SIGNATURES

■ R.C. 709.033 permits a board of county commissioners to enter an order allowing annexation if it finds, *inter alia:*

"(C) The persons whose names are subscribed to the petition are owners of real estate located in the territory in the petition, and as of the time the petition was filed with the board of county commissioners the number of valid signatures on the petition constituted a majority of the owners of real estate in the territory proposed to be annexed."

At the time of the August 6 hearing before the commissioners, the plaintiffs claim that, at most, only six of the eleven signatures of property owners were still valid on the annexation petition. The issue concerns the signature of property owner Mary Robinette Dixon by Arlene Linscott, who was her attorney-in-fact pursuant to a written power of attorney.

Mary Robinette Dixon is the mother of Arlene Linscott. In 1985, Arlene Linscott and Marilyn Wiggins quitclaimed their interest in the real estate to their mother after their father, Thomas Lawrence Dixon, died. On November 11, 1994, Mary Robinette Dixon appointed Arlene Linscott and/or her husband, Gerald Linscott, her true and lawful attorney-in-fact. This power of attorney is truly a general power of attorney because it authorizes Arlene Linscott to do everything conceivably possible with Dixon's money, real estate, and personal property. The following paragraph shows that Dixon appointed Arlene Linscott to have unlimited power over matters involving her real estate:

"For me and in my name, to make, seal, and deliver, bargain, contract for, agree for, purchase, receive and take lands, tenements, hereditaments, and accept the possession of all lands, and all deeds and other assurances, in the law therefor, and to lease, let, demise, bargain, sell, remise, release, convey, mortgage, and hypothecate lands, tenements, and hereditaments upon such terms and conditions and under such covenants as they shall see fit;

"Also to bargain and agree to, buy, sell, mortgage, hypothecate, and in any way and manner deal in and with goods, wares, automobiles, and merchandise, choses in action, and other property in possession or in action, and to make, do and transact all and every kind of business of whatsoever nature and kind;

"And also for me and in my name, and as my act and deed, to sign, seal, execute, deliver and acknowledge such deeds, leases, mortgages, hypothecations, bills of lading, bills, checks, bonds, notes, receipts, evidence of debt, releases and satisfaction of mortgage, judgments and other debts, and such other instruments in writing of whatsoever kind and nature as may be necessary or proper in the premises;

"GIVING AND GRANTING unto my said attorney-in-fact full power and authority to do and perform every act necessary, requisite, or proper to be done in and about the premises as fully as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney shall lawfully do or cause to be done by virtue hereof."

It is reasonable to interpret that power to include the determination to act on Dixon's behalf in petitioning for a shift of governmental authority over Dixon's property from one political entity to another. See *In re Annexation of 201.2 Acres* (Feb. 2, 1983), Summit App. No. 10763, unreported, 1983 WL 3959.

The plaintiffs argue that Arlene Linscott did not have the authority to sign on behalf of her mother. However, Dixon, the principal, has never made that argument or denied that Arlene Linscott signed her name. The court notes that Dixon has not joined the lawsuit as a plaintiff and never indicated to the commissioners that she wanted her signature withdrawn from the petition or that

she was against the annexation. She has not sought to have her signature declared invalid.

Also, Dixon ratified Arlene Linscott's actions in writing on August 7.

## 2. ERROR IN PROCEEDINGS/DENIAL OF DUE PROCESS

In their stipulation, the parties requested the court to rule on the admissibility of Petition # 2 documents. The court has reviewed these documents and considers them admissible.

R.C. 709.033(E) gives the commissioners ninety days from the date of hearing to make their decision. Petition # 1 was heard on August 6, 1996. The commissioners' decision was announced on September 10, 1996.

The plaintiffs allege that the commissioners erred by deciding Petition # 1 prior even to hearing Petition # 2. The defendants point out that Petition # 2 was not filed until the day before the previously announced hearing on August 6.

The plaintiffs assert that the commissioners should have weighed the relative pros and cons of both petitions before making a decision. The plaintiffs claim that the commissioners' failure to do so violated the due process requirements of the annexation process.

The court finds that there is no requirement that the commissioners consider all incompatible annexation petitions before them and then choose between them. The commissioners could have considered both petitions at one hearing, but chose not to.

At the August 6 hearing, the plaintiffs had the opportunity to, and did, oppose Petition # 1. Attorney Paul J. Gerig was present on behalf of Charles E. Townsend and other landowners. Attorney Frank Lavelle was present on behalf of the village of Buchtel.

Also speaking against Petition # 1 was John L. Sullivan, President of the Buchtel Village Council. The village of Buchtel filed written objections with the commissioners on or about August 15.

Although the commissioners may not have had a hearing on both of the petitions and voted on both of the petitions at the same time, they certainly had the benefit of the views of the village of Buchtel and the opposing landowners in their consideration of Petition # 1.

The seminal case concerning a board of county commissioners' duty in addressing incompatible petitions for annexation is *State ex rel. Hannan v. DeCourcy* (1969), 18 Ohio St.2d 73, 47 O.O.2d 193, 247 N.E.2d 465. There, the Supreme Court of Ohio held as follows in paragraphs two and three of the syllabus:

"2. The time of filing various petitions with a board of county commissioners for annexation and incorporation of all or part of the same unincorporated territory is not determinative of any priority for the consideration of such petitions.

"3. The order of precedence for the consideration of incompatible petitions for incorporation or annexation or both, within the jurisdiction of a board of county commissioners is lodged in the discretionary powers of that agency, subject to applicable statutory time limitations. All concurrent petitions, including those unaffected by temporal limitations, may be considered jointly, or successively, if it is possible to comply with temporal limitations, the presumption being indulged that the board will not arrive at irreconcilable decisions."

Although the court mentioned in footnote 2 the advisability of hearing incompatible petitions jointly, if possible, the court made it clear that the matter rests within the discretion of the board of commissioners. See, also, *Holcomb v. Summit Cty. Bd. of Commrs.* (1980), 62 Ohio St.2d 241, 243, 16 O.O.3d 278, 279–280, 405 N.E.2d 262, 263. Plaintiffs in this case have articulated no persuasive grounds indicating that the commissioners abused their discretion in hearing and deciding Petition # 1 prior to acting upon Petition # 2.

## 3. ACCURACY OF PLAT AND DESCRIPTION

■ The plaintiffs claim that the significant omissions in the instant proceedings are:

1. Lack of parcel i.d. numbers from the county tax duplicate, which would help identify which deed-tract descriptions were intended;

2. That larger-scale maps of the area near the Nelsonville York school property were available but were not used; and

3. The failure of the commissioners to determine whether the petition and map are adequate.

The plaintiffs claim that in trying to fulfill the requirements regarding the description of the territory, the preparers of Petition # 1 chose to photocopy and attach copies of landowners' deeds and the tax plat map for York Township, Section 16. The plaintiffs further allege that the deeds are confusing and that more than the tracts involved here are contained therein, and that the scale of the tax plat map is so small that confusion over the southern boundary line of the territory to be annexed has resulted.

At the August 6 hearing, the commissioners had a letter dated July 31, 1996, from the county engineer approving the proposed annexation pursuant to R.C. 709.031(C).

On July 16, the commissioners received a copy of attorney Hunter's June 14 letter to the county auditor notifying him of the parcel numbers.

■ An accurate map of the territory to be annexed is required for a board of county commissioners to approve a proposed annexation. R.C. 709.033(E). "The purpose of the map requirement is to permit the commissioners and any interested parties to determine the exact geographic location and size of the area to be annexed." *In re Annexation of Approximately 257 Acres* (Nov. 8, 1991), Portage App. No. 91–P–2286, unreported, 1991 WL 233748. In other words, the accurate map requirement serves the purpose of providing notice to interested parties. *Id.* The determination of accuracy is a question of fact within the discretion of the board of county commissioners. *In re Annexation of 131.983 Acres* (July 7, 1995), Miami App. No. 94–CA–15, unreported, 1995 WL 418694.

■ The commissioners' journal entry memorializing their September 10, 1996 meeting reflects that the commissioners found that "[Petition # 1] has met all requirements of the law." R.C. 709.033 requires the commissioners to enter an order, not written findings of fact. *Falls Twp. Bd. of Trustees v. Hiscock* (Jan. 23, 1991), Muskingum App. No. CA 90–34, unreported, 1991 WL 11621, disapproved, in part, on other grounds, *In re Appeal of Williams* (Jan. 16, 1996), Stark App. No. 1995CA00144, unreported, 1996 WL 74695. The record before the court supports a finding that the map and descriptions accompanying Petition # 1 are sufficient to provide interested parties with notice. The commissioners' finding on this issue will not be disturbed.

## 4. GERRYMANDERING/STRIP ANNEXATION

■ The plaintiffs allege that the approval of Petition # 1 will result in inappropriate "strip annexation." In *Middletown v. McGee, supra,* the Supreme Court of Ohio reviewed the law in this area:

"In Ohio, courts have frowned upon the use of connecting strips of land to meet the contiguity requirement when annexing outlying territory not otherwise connected to the annexing municipality. Such annexations are usually referred to as 'strip, shoestring, subterfuge, corridor, and gerrymander annexations.' *Watson v. Doolittle, supra* [10 Ohio App.2d], at 148–149, 39 O.O.2d at 270, 226 N.E.2d at 775. See, also, *Stressenger v. Bd. of Cty. Commrs.* (1971), 28 Ohio App.2d 124, 57 O.O.2d 193, 276 N.E.2d 265. But, see, *Bd. of Twp. Trustees v. Horn* (1981), 2 Ohio App.3d 170, 2 OBR 186, 441 N.E.2d 628. In determining whether a proposed annexation satisfies the contiguity requirement, these courts, as well as the courts of other jurisdictions, have noted that the basic concept of a municipality is that of a unified body, and have consistently inquired whether an annexing municipality would conform to this concept if a proposed annexation were to take

place. The concept of a municipality as a unified body has been expressed as follows:

" ' "* * * The legal as well as the popular idea of a town or city in this country, both by name and use, is that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants—that is, a body of people collected or gathered together in one mass, not separated into distinct masses; and having a community of interest because [they are] residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separate [sic] or segregation. * * *" ' Watson v. Doolittle, supra [10 Ohio App.2d], at 149, 39 O.O.2d at 271, 226 N.E.2d at 775, quoting 19 Ruling Case Law (1917) 734, Section 40." Middletown, supra, 39 Ohio St.3d at 288, 530 N.E.2d at 905.

In Middletown v. McGee, the Supreme Court was faced with the attempted annexation of, among other things, an eighty-foot-wide section of roadway extending away from the municipality for several miles. The Supreme Court cited this as a blatant example of prohibited "strip annexation."

Other Ohio courts have decried other aspects of "strip annexation":

" 'Shoestring or gerrymander annexation is not a rare phenomenon. The tendency of subdividers to reach far out into the countryside for vacant land, and their desire to attach it to the city of services, is natural; however, this can lead to annexations which in reality are no more than isolated areas connected by means of a technical strip a few feet wide. Such a result does not coincide with legislative intent, and tends to create crazyquilt boundaries which are difficult for both city and town to administer.' " Watson v. Doolittle (1967), 10 Ohio App.2d 143, 150, 39 O.O.2d 267, 271–272, 226 N.E.2d 771, 776 quoting Town of Mt. Pleasant v. City of Racine (1964), 24 Wis.2d 41, 46, 127 N.W.2d 757; see, also, In re Appeal of Williams, supra (rejecting the proposed annexation of a nine-acre subdivision connected to the city by a railroad right-of-way); Harrison Twp. Bd. of Trustees v. Anness (Sept. 20, 1995), Hamilton App. No. C–940271, unreported, 1995 WL 553305 (rejecting the proposed annexation of a sixty-nine-acre tract connected to the city by a seventeen-foot-wide, half-mile-long strip of property).

The court's review of the authorities and the record leads it to the conclusion that the approval of Petition # 1 will not result in prohibited "strip annexation." Although the map accompanying Petition # 1 reveals that the bulk of the annexed land will be connected to Nelsonville by a rectangular piece of property perhaps roughly five hundred feet by six hundred feet (the Charles and Opal Townsend property), the situation is not akin to the more egregious examples of "shoestring" annexation mentioned above, where excessively long, narrow strips were utilized to connect outlying areas. The evidence supports the conclusion that the contiguity requirement has been met in this case.

The plaintiffs also assert that Petition # 1 involves a territory "unreasonably large." See R.C. 709.033(E). Factors relevant to this issue are (1) the geographic character, shape, and size of the annexation territory in relation to both the annexing municipality and the territory remaining after the annexation is completed, (2) the ability of the annexing municipality to provide necessary services to the added territory, and (3) the effect upon remaining township territory. *In re Annexation of 1,544.61 Acres* (1984), 14 Ohio App.3d 231, 233, 14 OBR 259, 261–262, 470 N.E.2d 486, 489–490.

Here, Petition # 1 involves approximately ninety-five acres, an area considerably smaller than the annexing municipality. Cf. *Watson v. Doolittle, supra* (four hundred-forty-acre municipality's attempt to annex eleven-hundred-acre territory rejected). Moreover, the land to be annexed represents but a small fraction of the amount of remaining York Township land.

There was ample evidence before the commissioners that Nelsonville has the ability to provide necessary services to the area. Bill Wend, Nelsonville City Council President, testified before the commissioners that Nelsonville already provides water service to the area and that if annexation occurs, water rates for residents of the area will decrease. Nelsonville City Manager Jim Andrick testified about Nelsonville's ability to provide full-time fire and police protection to the area, and the city's plan to provide sewer services to replace the septic systems presently used by area residents. Although attorneys Gerig and Lavelle, on behalf of their respective clients, and John L. Sullivan, Buchtel Village Council President, attempted to cast doubt upon Nelsonville's abilities in this respect, the commissioners have the duty to weigh the evidence. The commissioners' finding on this issue was not unreasonable or otherwise erroneous.

Jim Pancake, York Township Trustee, testified at the commissioners' hearing about the township trustees' unanimous approval of the proposed annexation. Although the plaintiffs predict "confusion" in the provision of services, especially to the few whose unincorporated properties will be sandwiched between Buchtel and the expanded Nelsonville, there was little evidence of the likelihood of confusion.

In sum, the court concludes that the record supports a finding that the Petition # 1 territory is not "unreasonably large."

## 5. CIRCUMVENTION OF RIGHT TO VOTE

The plaintiffs claim that Nelsonville circumvented R.C. 709.13 through 709.21, which require that a vote by the electorate of the unincorporated area be taken at the next general or primary election occurring at least seventy-five days after city council has certified its ordinance under R.C. 709.14.

The plaintiffs state that Nelsonville paid its city attorney to prepare Petition # 1; that Nelsonville's officials, officers, and agents circulated the petition in the community; that only Nelsonville officials testified before the commissioners on August 6; and that Nelsonville's law director, who is also the agent of the property owners, has been financed by the city of Nelsonville.

The case of *In re Annexation of 118.7 Acres in Miami Twp.* (1990), 52 Ohio St.3d 124, 556 N.E.2d 1140, is dispositive of this issue. There, the Supreme Court of Ohio held as follows in the syllabus:

"The two statutory methods of annexing territory to a municipality, (1) by the petition of landowners pursuant to R.C. 709.02 through 709.12, and (2) by the petition of a city pursuant to R.C. 709.13 through 709.21, are *not* mutually exclusive. Accordingly, a municipality may assist landowners in the processing of any such landowners' petition and expend municipal funds therefor." (Emphasis *sic.*)

Petition # 1 was the result of the utilization of method number one above. Having reviewed the record, the court finds Nelsonville's involvement with Petition # 1 not significantly different or greater than the city of Moraine's involvement with a similar petition in *In re Annexation of 118.7 Acres in Miami Twp.* Moraine's activities in furtherance of the petition in that case were held to be lawful and appropriate. Here, the plaintiffs speculate that Nelsonville's actions unduly influenced and pressured the petitioning landowners to sign. However, the record does not show that any of the petitioning landowners have objected to Nelsonville's role in their annexation efforts. See *Perry Twp. Bd. of Trustees v. Cicchinelli* (1986), 35 Ohio App.3d 173, 175, 520 N.E.2d 235, 237. Speculation is insufficient to meet the heavy burden of proof carried by the plaintiffs. See *Middletown v. McGee, supra,* 39 Ohio St.3d at 286, 530 N.E.2d at 904. There has been no circumvention of anyone's right to vote, and this assignment of error is without merit.

## SUMMARY

It is not the court's duty to decide if annexation is a good idea or a bad idea. That responsibility rests with the commissioners. When persons challenge the commissioners' approval of an annexation petition, they have the heavy burden of proving by clear and convincing evidence that the commissioners did not follow the law in approving the annexation.

The court finds that the plaintiffs have failed to prove that the September 10, 1996 decision of the Athens County Board of Commissioners to grant the Petition # 1 annexation will adversely affect their legal rights or interests. Moreover, the plaintiffs have failed to prove that there was error in the proceedings before the

commissioners, that the commissioners' decision was unreasonable or unlawful, or that there was error in the findings of the commissioners. The court also finds that the commissioners' decision was based on the preponderance of substantial, reliable, and probative evidence presented at the August 6, 1996 hearing. Accordingly, the court finds the plaintiffs' November 21, 1996 petition for injunction not to be well taken and hereby DENIES it with costs to the plaintiffs.

This is a judgment or final order that may be appealed. The clerk, pursuant to Civ.R. 58(B), shall serve notice of it on all parties who are not in default for failure to appear. Within three days after journalization of this entry, the clerk is required to serve notice of the judgment pursuant to Civ.R. 5(B).

*Judgment accordingly.*