The Greene County Board of Commissioners ("the board") appeals from a judgment of the Greene County Court of Common Pleas, which reversed its decision denying the petition for annexation of 315.118 acres ("the territory") into the City of Xenia ("the city").
The facts and procedural history are as follows.
On January 22, 1996, a petition for annexation was filed with the board by nine of the thirteen property owners of the territory: Theodore M. Arnovitz, Beverly A. Saeks, Fred W. Forbes, Carolyn L. Forbes, Rickey A. Gearhart, June C. Gearhart, Josephine Drake, Jeffrey R. Spracklen, and Patricia J. Spracklen, through their agent, Matthew E. Arnovitz. The territory was located in the Township of Xenia and shared a 482.73 foot common border with the city. A public hearing on the annexation petition was scheduled for April 4, 1996. On March 14, 1996, the city passed a resolution indicating the services it would provide to the annexed territory: full-time police, fire, and EMS services, water and sewer facilities, sanitation services through private haulers, street lighting and cleaning, city park and recreation facilities and programs, and other miscellaneous services. The resolution also stated that the property tax rate for the city was $60.23 mills per dollar of property listed for taxation and that the income tax rate ranged between 0.25% and 1.75%. On March 20, 1996, Arnovitz informed the board that notice of the annexation petition and the hearing date had been published in the Xenia Daily Gazette for four consecutive weeks. On April 3, 1996, the board received a fax transmittal, which was later confirmed by letter, from Rickey Gearhart indicating that he, June Gearhart, and Josephine Drake wished to withdraw their property from the proposed annexation.
On April 4, 1996, the board conducted a public hearing and offered interested parties the opportunity to ask questions about and express their opinions on the proposed annexation. Having considered the testimony, the petition, the map of the subject property, reports from the Greene County Engineer and the Regional Planning and Coordinating Commission, and other submissions, the board denied the annexation petition on July 2, 1996. On August 9, 1996, the city and Arnovitz filed a notice of appeal from the board's decision. After reviewing the briefs submitted by both parties and the transcript of the public hearing, the trial court concluded the board had "acted against the preponderance of substantial, reliable, [and] probative evidence in denying the petition for annexation." On June 13, 1997, the trial court reversed the board's resolution and granted the annexation. This appeal followed.
The following discussion of the standard for reviewing annexation petitions is relevant to the board's four assignments of error.
Pursuant to R.C. 709.033, the board must grant a petition for annexation if, after conducting a hearing, it finds that the procedural requirements for annexation were satisfied and that:
 The territory included in the annexation petition is not unreasonably large; the map or plat is accurate; and the general good of the territory sought to be annexed will be served if the annexation petition is granted.
R.C. 709.033(E). The board's decision may be appealed to the court of common pleas, which may reverse, vacate, modify, or remand the decision if it finds that the decision was "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. The trial court's "review is a hybrid form of review; it involves a consideration of the evidence. To a limited extent, a substitution of judgment by a reviewing common pleas court is permissible." In re Annexation of 466.112 Acres from WashingtonTwp., Montgomery Cty. to Centerville (Oct. 16, 1991), Montgomery App. No. 12567, unreported, reversed on other grounds (1992),65 Ohio St.3d 226. When reviewing the decision of the trial court, we apply the following standard:
 In determining whether the standard of review was correctly applied by the common pleas court, a court of appeals has a limited function which does not involve a determination as to the weight of the evidence. Our inquiry is limited to a determination of whether we can say, as a matter of law, that there did exist a preponderance of reliable, probative and substantial evidence to support the finding by the trial court. Thus, a reviewing court must determine whether the trial court's judgment is against the weight of the evidence. Judgments supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. (Citations omitted).
Id. With these standards in mind, we review the board's four assignments of error.
 I. THE COURT OF COMMON PLEAS ERRED BY SUBSTITUTING ITS JUDGMENT FOR THAT OF THE BOARD OF GREENE COUNTY COMMISSIONERS.
The board contends that the trial court substituted its judgment for that of the board on the issue of whether the city could provide fire protection services. Although the board had found that essential fire services could be provided by the township and that the city had presented no evidence that fire services would be increased upon annexation, the trial court found:
 While the fire protection may become an issue, the city has a "mutual aid" contract with the surrounding communities, and, in case of a fire, the property would be served by the township.
The city's resolution, which was read at the hearing, stated that the Xenia Fire Division would provide full-time fire and EMS services to the territory. Jim Percival, the assistant city manager, explained that although the city had no tanker trucks, it could provide fire protection services with its own equipment and through "mutual aid agreements" with other fire departments in the area. Percival testified that ninety-five percent of the city fire department's responses to calls from the territory would occur in five minutes or less. Percival also stated that the territory would be furnished with fire hydrants after its annexation and development.
In opposition to the proposed annexation, several people who attended the hearing testified that, because there were no fire hydrants on the territory and because the city owned no water tanker trucks, the city could not provide adequate fire protection services. Clifton Beegle, the fire chief of the Xenia Township Fire Department, testified that the fire hydrant closest to the territory was approximately two thousand nine hundred feet away and that the city owned neither tanker trucks for transporting water nor vehicles for fighting brush fires. He further explained that the township owned three engine pumpers, three tanker trucks, four vehicles equipped to fight brush fires, and two portable tanks.
We cannot say that, as a matter of law, the trial court's judgment was against the weight of the evidence. It was reasonable for the trial court to consider the city's resolution and Percival's testimony to be competent, credible evidence that the city could provide fire protection services. Because the trial court is permitted to consider the evidence and to substitute its judgment, to a limited extent, for that of the board, the trial court acted reasonably in finding that the board's decision was not supported by a preponderance of reliable, probative, and substantial evidence.
The first assignment of error is overruled.
 II. THE COMMON PLEAS COURT ERRED IN FINDING THAT THERE WAS SUFFICIENT CONTIGUITY BETWEEN THE CITY OF XENIA AND THE TERRITORY TO BE ANNEXED.
The board contends that, because the territory consists of 315.118 acres and the point of contiguity between the city and the territory is only 482.73 feet, the annexation would create an "artificial gerrymandering" that is "illegal and inequitable."
The trial court found that the contiguity requirement had been satisfied, pointing out that the annexation would not create an "island" and that there was a common border with the city.
The statutory provisions governing annexation require that the territory be contiguous, adjacent, or adjoined to the annexing city. See R.C. 709.02, 709.13 through 709.16, 709.18, 709.22
through 709.24; Watson v. Doolittle (1967), 10 Ohio App.2d 143,147. Although some touching between the city and the territory is required, "the law is unsettled as to what degree of touching is needed to fulfill the contiguity requirement." Middletown v. McGee
(1988), 39 Ohio St.3d 284, 287. In determining whether a proposed annexation meets the contiguity requirement, Ohio courts have considered whether the annexation would further the concepts of unity and compactness of the city. Id. at 287, citing Watson,10 Ohio App. 2d at 149. Proposed annexations that would require the use of connecting strips of land to satisfy the contiguity requirement, such as "strip, shoestring, subterfuge, corridor, and gerrymander annexations," are inconsistent with the goals of unity and compactness. Watson, 10 Ohio App.2d at 148-149. A shoestring annexation has been described as one "where excessively long, narrow strips were utilized to connect outlying areas." In rePetition to Annex 95 Acres to Nelsonville (C.P. 1997), 84 Ohio Misc.2d 20,29 ("Nelsonville"). In a case where the "true target for annexation" was connected to the city by a corridor, which consisted of properties running along a railroad right-of-way and a city park, the appellate court concluded that the annexing city and the territory were not contiguous. In re Williams (Feb. 16, 1996), Stark App. No. 95-CA-0144, unreported.
In this case, the city and the territory share a common boundary of approximately 482.73 feet. The territory will not create a strip, shoestring, subterfuge, corridor, or gerrymandered annexation. See Watson, 10 Ohio App.3d at 148-149. The maps submitted along with the petition indicate that the point of contiguity is not a long, narrow strip used to connect an outlying area to the city. See Nelsonville, 84 Ohio Misc.2d at 29. Thus, the trial court acted reasonably in finding that the board's decision that the city and the territory were not contiguous was not supported by a preponderance of reliable, probative, and substantial evidence.
The second assignment of error is overruled.
 III. THE COMMON PLEAS COURT ERRED IN REVERSING THE BOARD OF COMMISSIONERS' DECISION THAT THE ANNEXATION WOULD NOT SERVE THE GENERAL GOOD OF THE TERRITORY TO BE ANNEXED.
The board contends that the trial court erred in finding that the annexation would serve the general good of the territory because owners of approximately one-third of the territory, the Gearharts and Drake, opposed the annexation.
R.C. 709.033(E) requires the board to consider whether the proposed annexation will serve the general good of the territory.Lariccia v. Board of Commrs. (1974), 38 Ohio St.2d 99, 101. "Whether a proposed annexation will serve the general good of the inhabitants and owners of the territory sought to be annexed is a factual determination within the discretion of the board of county commissioners." McGee, 39 Ohio St.3d at 288. A factor relevant to the general good analysis includes whether the annexing city can provide an adequate level of services. In re Annexation of343.2255 Acres from Symmes Twp. (1995), 106 Ohio App.3d 512, 515. Courts determine the adequacy of the annexing city's services by comparing the services it will make available to those available to the territory prior to annexation. Id. at 515. Irregular boundaries and the potential for confusion of emergency response vehicles are other relevant factors. In re Petition forAnnexation of 639.225 Acres, More or Less from Union Twp. (Jan. 12, 1994), Miami App. No. 93CA21, unreported.
In this case, the board stated that, because the Gearharts and Drake had removed their signatures from the petition, approving the annexation "without the consent of the largest single landowner[s] would not serve the general good of the territory to be annexed." The trial court found, however, that the Gearharts and Josephine Drake's attempt to remove their names from the annexation petition had not been performed in compliance with the statutory requirements.
R.C. 709.03 permits the removal of a property owner's signature from an annexation petition if the property owner files a written notice of withdrawl with the clerk of the board "within twenty days after such a notice of filing is delivered to the clerk of the township in which he resides." After the expiration of the twenty-day period, signatures may only be removed if the following requirements are satisfied:
 At the hearing any owner who signed the petition for annexation may appear, and after being sworn as provided by section 305.21 of the Revised Code, testify orally that his signature was obtained by fraud, duress, misrepresentation, including any misrepresentation relating to the provision of municipal services to the territory proposed to be annexed, or undue influence. Any person may testify orally after being so sworn in support or rebuttal to such prior testimony by the owner. The commissioners, the agent for the petitioners or his attorney, and such owner or his attorney may examine such witnesses, including the owner. If a majority of the county commissioners find that such signature was obtained under circumstances that did constitute fraud, duress, misrepresentation, or undue influence, they shall find the signature to be void, and shall order it removed from the petition as of the time the petition was filed.
R.C. 709.032. We agree with the trial court's finding that, because the Gearharts and Drake neglected to follow the procedures set forth in R.C. 709.03 and R.C. 709.032, their signatures were not properly removed from the petition and that the board should not have considered their wishes to have their signatures removed from the petition in determining whether the annexation would further the general good of the territory.
The board also found that the general good of the territory would not have been furthered by the annexation because of the lack of evidence that the city could provide an increased level of fire services. The trial court, however, found that, through mutual aid agreements with the township, the city could provide fire services. The trial court also stated that the city was "in a better position to provide sewer and water services to the territory."
As we concluded in our discussion of the board's first assignment of error, the trial court reasonably determined that the city could provide adequate fire protection services. Additionally, Percival stated that the response time for police units also would be less than five minutes. He explained that, because a city water policy prevented the city from providing water services to the territory unless the territory had been annexed or entered an agreement with the city to become annexed, the territory would benefit from the sewer and water services that the city had resolved to provide. Furthermore, the owners and occupants of the territory would be in no greater or worse position after annexation with respect to city park and recreation access and property taxes. The city had been allowing access to the general public, and the resolution stated that it would make available its parks and recreational facilities and programs to the territory. According to the resolution, the property tax rate for the city and the township was $60.23 mills per dollar of property listed for taxation.
At the hearing, the following miscellaneous reasons were stated in opposition to the petition: taking productive farmland out of use, the city's previous neglect to provide promised lawn services to other annexed areas, increased traffic problems and water run-off, ineffective maintenance of a section of Kinsey Road, over which the city and the township would have divided ownership, the city's future inability to adequately provide public services due to its plans for further annexations, and the public's lack of knowledge as to future plans for the territory.
We cannot say that the trial court erred as a matter of law in finding that the preponderance of the evidence did not support the board's decision. The general good analysis is not focused on whether the city could provide better services; rather, this analysis compares the level of services available through the city to the level currently offered. A city's services are considered adequate if the city can maintain the current level of services. Despite the fact that the city would need to enter a mutual aid agreement to maintain the current level of fire protection services, the trial court acted reasonably in finding that the board's decision that the annexation would not further the general good of the territory was not supported by a preponderance of reliable, probative, and substantial evidence.
The third assignment of error is overruled.
 IV. THE COMMON PLEAS COURT ERRED IN OVERRULING THE FINDING OF THE BOARD OF COMMISSIONERS THAT THE AREA TO BE ANNEXED WAS UNREASONABLY LARGE.
The board contends that the territory was unreasonably large because the city could not provide the necessary services, i.e., primary fire protection, to the territory.
The trial court did not expressly state that the territory was not unreasonably large; however, it disagreed with the board's conclusion regarding fire protection services.
"The issue of what constitutes an `unreasonably large' area of territory which is to be annexed is not numerically or geographically defined in the statute." In re Annexation ofTerritory in Olmsted Twp. (1984), 14 Ohio App.3d 260, 263. Ohio courts have adopted a three-prong test to determine whether a territory is unreasonably large.
 "(1) the geographic character, shape and size (acreage) of the territory to be annexed in relation to the territory to which it will be annexed (the city), and in relation to the territory remaining after the annexation is completed (the remaining Township area); * * *
 "(2) the ability of the annexing city to provide the necessary municipal services to the added territory. (Geographic as well as financial `largeness' may be considered. * * *)
 "(3) the effect on remaining township territory if annexation is permitted. If the territory sought to be annexed is so great a portion of the township's tax base that the annexation would render the remaining township incapable of supporting itself, then the Board might reasonably conclude the proposed annexation is unreasonably large, although such annexation would benefit the territory sought to be annexed."
 In re Annexation of 1,544.61 Acres (1984), 14 Ohio App.3d 231,233, quoting Herrick v. Bd. of County Commrs. (Jan. 23, 1980), Summit App. No. 9425, unreported.
The board does not argue that the character, shape, or size render the territory unreasonably large. Rather, its argument is based solely on the allegation that the city cannot provide fire protection. As we have already discussed, the trial court reasonably determined that the city could in fact provide the necessary fire protection services. Finally, the board does not argue and the record does not suggest that the annexation would have a debilitating effect on the remaining township. In reAppeal of Jefferson Twp. Bd. of Trustees (1992), 78 Ohio App.3d 493,499.
Because the trial court acted reasonably in finding that the board's decision that the territory was unreasonably large was not supported by a preponderance of reliable, probative, and substantial evidence, we overrule the fourth assignment of error.
The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Kimberly H. Mayhew
Stephen K. Haller
Hon. Lee A. Bixler