IN RE ANNEXATION OF 118.7 ACRES IN MIAMI TOWNSHIP TO CITY OF MORAINE: MIAMI TOWNSHIP BOARD OF TRUSTEES, APPELLANT, *v.* CATON ET AL., APPELLEES.

[Cite as In re Annexation of 118.7 Acres in Miami Twp. (1990), 52 Ohio St. 3d 124.]

(No. 89-848—Submitted April 11, 1990—Decided June 27, 1990.)

126

*Moots, Cope, Stanton & Kizer,*

*Elizabeth M. Stanton, Wanda L. Carter, Taylor & Associates Co., L.P.A.,* and *Jeffrey L. Taylor,* for appellant.

*William D. Forbes,* for appellee Rita Caton, Moraine City Clerk.

*Fred M. Izenson,* for appellee Peter H. Kuntz.

*Calfee, Halter & Griswold, John E. Gotherman* and *Stanley J. Dobrowski,* urging affirmance for *amicus curiae,* Ohio Municipal League.

*Michael H. Cochran,* urging reversal for *amici curiae,* Ohio Township Association and Montgomery Cty. Township Association.

HOLMES, J. The Board of Township Trustees of Miami Township, as well as the *amici* township associations basically argue in this appeal that the methods of annexing territory to a municipality, (1) by the petition of landowners pursuant to R.C. 709.02 through 709.12, and (2) by the petition of a city pursuant to R.C. 709.13 through 709.21, are mutually exclusive, and that, accordingly, a municipality may not assist landowners in the processing of any such landowners' petition and expend municipal funds therefor.[2] We disagree.

In reviewing the language within these statutes we find nothing that could be reasonably construed as providing for mutually exclusive methods of annexation. Nothing within R.C. 709.02 through 709.21 expressly provides that municipalities may not engage in the cooperative and mutually beneficial annexation activities complained of by the appellant. Supportive of the contrary position, R.C. 709.13 provides that a municipal corporation *may* enlarge its limits pursuant to R.C. 709.14 through 709.21. This means that if a city desires to initiate the annexation that it may proceed through the annexation process as set forth within these latter sections. This does not state or mean that the city is thereby prohibited from assisting or participating with landowners in the landowners' process for annexation.

The desires of property owners relative to their lands is one of the basic underlying considerations of the Ohio General Assembly in enacting annexation laws. As stated by the majority of this court in *Middletown* v. *McGee* (1988), 39 Ohio St. 3d 284, 286, 530 N.E. 2d 902, 904, a case involving an annexation by the city: "In enacting the statutes governing annexation, one of the intentions of the legislature was 'to give an owner of property freedom of choice as to the governmental subdivision in which he desires his property to be located.'" The choice for expression of landowners provided by R.C. 709.17, when a city petitions for annexation of land, is a vote by the electors of the unincorporated area of the township, a majority of whom must approve such proposed annexation.

Landowner approval of a petition

_____

[2] R.C. 709.02 provides, in pertinent part:

"The owners of real estate adjacent to a municipal corporation may, at their option, cause such territory to be annexed thereto, in the manner provided by sections 709.03 to 709.11, inclusive, of the Revised Code. Application for such annexation shall be by petition, addressed to the board of county commissioners of the county in which the territory is located, signed by a majority of the owners of real estate in such territory. * * *"

R.C. 709.13 provides:

"The inhabitants, generally, of a municipal corporation may enlarge the limits of such municipal corporation by the annexation of contiguous territory in the manner provided by sections 709.14 to 709.21, inclusive, of the Revised Code."

for annexation pursuant to R.C. 709.02 through 709.12 must also be obtained. R.C. 709.033 requires that the board of county commissioners must find that the number of valid signatures upon the petition for annexation constitutes a majority of the owners of real estate in the territory proposed to be annexed. Here, the board of county commissioners so . found. Further, the record shows that there were no property owners within the territory annexed who came forward and objected to such annexation.

There are two avenues by which ultimate annexation may be accomplished. One is utilized where the city desires to annex certain township territory, and no landowners in such territory have come forth to initiate such annexation. The other avenue is the one involved here, where the landowners themselves desire the annexation, as does the city, and the landowners voluntarily initiate the petitions to obtain the annexation of their township property to the city. In the words of Judge John McCormac in *In re Petition for Annexation of 162.631 Acres* (1988), 52 Ohio App. 3d 8, 11, 556 N.E. 2d 200, 204: "The primary difference in the two petition methods is who signs the petition rather than that there may not be an interest or involvement in the procedure initiated by those who do not formally commence the proceeding. Hence, even if the procedures are mutually exclusive, it does not follow that the municipality which has an interest in its boundaries may not be involved in assisting landowners with their petition."

We conclude that the General Assembly did not prescribe mutually exclusive means of annexation, but that it simply sought to assure that a municipality involved either seek the approval of the annexation petition filed by a majority of those landowners in the territory to be annexed, or proceed to file an annexation petition on its own and provide for the mandated election in the township as set forth in the statute.

Relative to the issue of whether a municipality may be cooperatively involved in a property owner's annexation process pursuant to R.C. 709.02 through 709.12, we must state at the outset that there are no provisions in Ohio's annexation statute which restrict or limit a municipal corporation from using its efforts or expending its funds to effect such annexation. In fact, as pointed out by the *amicus curiae* Ohio Municipal League in its brief herein, a municipal corporation is intricately involved in an annexation process initiated by a landowners' petition.[3]

However, we recognize that the

---

[3] The municipal corporation becomes involved in the annexation process following a landowners' petition in several ways, including: (i) delivery of the notice to the clerk of the municipal legislative authority of the filing of the annexation petition (R.C. 709.03), (ii) delivery of a notice to the clerk of the municipal legislative authority of the notice of the substance of the petition and the time and place where the annexation petition will be heard, which notice is published in a newspaper of general circulation in the county (R.C. 709.031[A]), (iii) adoption by such legislative authority of a statement indicating what services, if any, will be provided by the municipal corporation if the annexation occurs (R.C. 709.031[B]), (iv) transmittal of transcript of the annexation proceedings to the municipal corporation if the county commissioners grant the petition for annexation or, if the annexation is not granted, the transmittal of the order denying the annexation (R.C. 709.033), (v) retention of the annexation transcript by the clerk of the municipal legislative authority for a sixty-

assistance offered here by the city to the landowners in the annexation process was not that specifically provided for by statute, *i.e.,* the provision of legal counsel to draft the annexation petition, the hiring of an engineering firm to prepare the property map of the area to be annexed, as well as the giving of other city staff assistance. Moraine and *amicus* Ohio Municipal League argue that these types of expenditures of municipal funds supportive of the annexation of property to enlarge the municipality should be approved on the basis that such expenditures are an appropriate exercise of the power of local self-government, as granted to cities by Section 3, Article XVIII of the Ohio Constitution, for a proper municipal public purpose pertaining to the internal affairs of a city, in this instance, the city of Moraine.

The Attorney General of Ohio has issued a number of opinions to municipalities, concluding that municipal funds could not be spent in the furtherance of landowner-initiated annexation procedures under R.C. 709.02 through 709.12. See 1985 Ohio Atty. Gen. Ops. 85-034, at 2-119, and 1986 Ohio Atty. Gen. Ops. 86-008, at 2-33. The Attorney General set forth as the bases for such opinions that the General Assembly provides for the process of annexation in Ohio, that the two methods of annexation considered here were mutually exclusive, and that a municipality pursuant to its home rule power does not have the authority to employ counsel or offer the services of municipal employees to assist township residents in annexation proceedings.

We are in agreement with the Attorney General that laws relating to annexation are exclusively within the control of the General Assembly and not local governments. Accordingly, we held in *Beachwood* v. *Bd. of Elections* (1958), 167 Ohio St. 369, 371-372, 5 O.O. 2d 6, 8, 148 N.E. 2d 921, 923, that the detachment of territory from a municipality is a matter which requires the establishment of a uniform procedure throughout the state, and as such, is within the exclusive control of the General Assembly. In this regard, laws enacted by the General Assembly which establish procedures for annexation of property to municipalities throughout Ohio are general laws, and the activities by way of charter, ordinance, or otherwise, of municipalities may not be in conflict therewith. This must be so even though Moraine and *amicus* Ohio Municipal League argue that such actions are taken pursuant to constitutional self-government authority on behalf of the general welfare of the citizens of Moraine.

As stated previously, however, there is no specific provision to be found within R.C. Chapter 709 prohibiting cities from assisting property owners in the township from processing their petition for annexation. Accordingly, there being no prohibition, there is no apparent conflict, and therefore the expenditure of funds of the city for these cooperative purposes

---

day period, during which an interested person may seek to enjoin the annexation by bringing an action against the auditor or clerk of the municipal legislative authority and the agent for the petitioning owners, and the procedures to be followed by the municipal clerk upon completion of the injunction litigation (R.C. 709.07 through 709.09); (vi) acceptance of the annexation by the municipal legislative authority (R.C. 709.04) or rejection thereof by such legislative authority (R.C. 709.05), and (vii) filing by the municipal clerk of the transcript of the annexation proceedings with the county auditor, county recorder and Secretary of State (R.C. 709.06).

in furtherance of annexation would be in conformity with statutory annexation provisions.

However, we must additionally determine whether the expenditure of these funds is proper in the sense of its being for a public purpose. This court in *State, ex rel. McClure*, v. *Hagerman* (1951), 155 Ohio St. 320, 44 O.O. 309, 98 N.E. 2d 835, discussed the determinative law as to what may be considered to be an expenditure of funds for a public purpose as opposed to a private purpose. The court stated at 323-325, 44 O.O. at 311, 98 N.E. 2d at 837-838:

"* * * It must be considered well settled that the funds of a municipality can be expended only for public purposes. The object to be achieved or promoted by the expenditure must be reasonably related to the operation of the municipal government. The rule is stated in 38 American Jurisprudence, 86, Section 395, as follows:

" 'It is well settled that if the primary object of an expenditure of municipal funds is to subserve a public purpose, the expenditure is legal although it may also involve as an incident an expenditure which, standing alone, would not be lawful.'

"In 15 McQuillin, Municipal Corporations (3 Ed.), 36, the author says:

" 'Furthermore, the fact that a municipality is expressly authorized to expend a certain sum without specification as to the purpose of the expenditure does not authorize it to expend funds for other than a public purpose. However, if the primary object is to subserve a public municipal purpose, it is immaterial that, incidentally, private ends may be advanced. * * *

" '* * * *

" '* * * The courts as a rule have attempted no judicial definition of a public as distinguished from a private purpose, but have left each case to be determined by its own peculiar circumstances. Generally, a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within the municipal corporation, the sovereign powers of which are used to promote such public purpose. The phrase "municipal purpose" used in the broader sense is generally accepted as meaning public or governmental purpose as distinguished from private. The modern trend of decision is to expand and liberally construe the term "public use" in considering state and municipal activities sought to be brought within its meaning. The test of public use is not based upon the function or capacity in which or by which the use is furnished. The right of the public to receive and enjoy the benefit of the use determines whether the use is public or private.' "

In the instant case, the interests of Moraine flow not from the nature of the expenditure to assist private parties to effect an annexation, but rather from the citizens of Moraine generally as a result of the proposed annexation.[4]

Concluding, we hold that the ex-

---

[4] In their brief, *amicus* Ohio Municipal League provides the following examples of what may constitute the "general public good" in annexation proceedings:

"(1) New territory within the municipality will often generate additional property tax, income tax and other taxes and revenues which materially increase the resources that are required to provide municipal services * * *. New commercial or industrial tax base often means new jobs that will be available to unemployed persons who live in the municipality.

"(2) Newly annexed territory will

penditures here were not unlawful, and were reasonably necessary to accomplish the purposes of the statutes, *i.e.,* annexation initiated by landowners in the township by petition. Although annexation was also desired by Moraine, the assistance given the landowners did not constitute a violation of the procedures set forth within R.C. 709.02 through 709.12.

The appellant also argues that the board of county commissioners, in determining whether to grant the annexation, should not only consider the general good of the property to be annexed but should also consider the benefits and detriments to the other properties, and their owners, remaining within the township.

Under R.C. 709.033, the board of county commissioners is to determine whether the "general good of the territory sought to be annexed will be served." The board is not to determine whether the annexation would be in the best interests of the political subdivision from which the territory would be detached. Accord *Toledo Trust Co.* v. *Lucas Cty. Bd. of Commrs.* (1977), 62 Ohio App. 2d 121, 16 O.O. 3d 265, 404 N.E. 2d 764. Although the implications for the community to which the property would be annexed and for the property remaining after detachment may well be of some consequence, R.C. 709.033 directs the ultimate focus of annexation proceedings be on " 'the general good of the territory sought to be annexed' and requires granting of the petition when it is shown that such benefit will result." *Lariccia v. Mahoning Cty. Bd. of Commrs.* (1974), 38 Ohio St. 2d 99, 102, 67 O.O. 2d 97, 99, 310 N.E. 2d 257, 259; *Eaton* v. *Summit Cty. Bd. of Commrs.* (1974), 49 Ohio App. 2d 24, 3 O.O. 3d 101, 358 N.E. 2d 1377. The board of county commissioners can consider only the matters presented to it by petitioners to an annexation or other parties appearing at the hearing. It is not appropriate for the board to build a case for or against an annexation. Nor should this court mandate

---

often provide the land for new single and multiple family housing needed to replenish the municipalities' housing stock and to provide safe, sanitary and suitable housing in municipal urban areas, and to prevent the urban municipality from becoming primarily the home of aged, poor and disadvantaged persons.

"(3) Newly annexed territory will often provide additional tax base through increased valuation of real and tangible personal property, which in addition to providing tax revenue, will provide added debt capacity under Ohio's statutory direct and constitutional indirect debt limitations or unvoted general obligation debt. * * *

"(4) The existence of nearby developed areas outside a municipality may create problems with respect to planning and zoning and building standards, as well as street design that may adversely affect property values and the public welfare and safety within the municipality, or with respect to street design, adversely affect the flow of traffic in and through the municipality. Therefore, the general public is benefited by a municipality that promotes annexation of areas that are largely undeveloped to either prevent or eliminate such undesirable land use or street design.

"(5) Recreation areas and parks near urban neighborhoods are important to the welfare of municipal citizens. Municipalities that do not grow in area may be unable or hard pressed to provide for the open space required for the recreation and leisure activities of their citizens." See, also, *Goldwasser* v. *Izenson* (Jan. 22, 1988), Montgomery C.P. Nos. 86-732 and 86-1368, unreported, at 17-19, affirmed *sub nom. Guinn* v. *Coleman* (Aug. 4, 1988), Montgomery App. Nos. 10843 and 10844, unreported.

consideration of certain matters outside the terms of the statute. The General Assembly has not seen fit to so condition the board's determination. The General Assembly in enacting R.C. 709.033 has set the standards that the board of county commissioners must apply in an annexation proceeding in specific language and has restricted the discretion of the board to definite factual determinations. *Lariccia, supra.* The definite factual determinations do not include the effect of annexation on an area not annexed. *In re Kucharski* (1977), 56 Ohio App. 2d 121, 10 O.O. 3d 145, 381 N.E. 2d 1131.

Whether the good of the territory sought to be annexed will be served is a question of fact within the discretion of the board. The determination of such a question of fact can be overturned only upon a finding that it is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence. *Middletown* v. *McGee, supra,* at 288, 530 N.E. 2d at 906; *In re Petition for Annexation of 141.8 Acres* (1985), 24 Ohio App. 3d 215, 24 OBR 392, 494 N.E. 2d 1165. As the court of appeals below noted:

"The County Commission[ers] must be presumed to have considered all such information, pro and con, in arriving at [their] decision."

So long as the determination is not unconstitutional, illegal, arbitrary, capricious or unreasonable and the record contains a preponderance of substantial, reliable and probative evidence, the determination of the board of county commissioners to grant the petition for annexation should not be overturned. In this case the record clearly demonstrates the propriety of the determination and contains such evidence.

For the foregoing reasons, the decision of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.