[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Xenia v. Greene Cty. Bd. of Commrs.*, Slip Opinion No. 2020-Ohio-3423.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3423

THE STATE EX REL. THE CITY OF XENIA, APPELLEE, *v.* GREENE COUNTY BOARD OF COMMISSIONERS ET AL., APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Xenia v. Greene Cty. Bd. of Commrs.*, Slip Opinion No. 2020-Ohio-3423.]

*Annexation—Mandamus is a proper vehicle to compel county board of commissioners to grant city's annexation petition—Board failed to show that city's petition does not satisfy R.C. 709.023(E)(1), (4), (5), or (7)— Court of appeals' judgment granting writ of mandamus ordering board to approve city's petition affirmed.*

(No. 2019-1791—Submitted May 12, 2020—Decided June 25, 2020.)

APPEAL from the Court of Appeals for Greene County,

No. 2018CA0021, 2019-Ohio-4805.

_____

**Per Curiam.**

{¶ 1} This is an annexation case concerning roughly 45 acres of land located between the city of Xenia and Central State University.  The Second District Court

of Appeals granted the city's request for a writ of mandamus ordering the Greene County Board of Commissioners ("the county") to approve the city's annexation petition. The county has appealed, arguing that a writ of mandamus cannot compel it to grant the city's petition because, it says, it relied on its discretion in denying the petition and performed all its statutorily required duties. The county also argues that the city's petition falls short of the statutory requirements for approval. For the reasons that follow, we affirm.

## I. LEGAL BACKGROUND

{¶ 2} In Ohio, "annexation is strictly a statutory process." *In re Petition to Annex 320 Acres to S. Lebanon*, 64 Ohio St.3d 585, 591, 597 N.E.2d 463 (1992). The General Assembly comprehensively reformed Ohio's annexation processes in 2001 with the enactment of Am.Sub.S.B. No. 5, 149 Ohio Laws, Part I, 621 ("S.B. 5"). *See State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.*, 112 Ohio St.3d 262, 2006-Ohio-6411, 858 N.E.2d 1193, ¶ 3 (discussing the legislation). S.B. 5 established three procedures "allow[ing] for expedited annexations when all the property owners within a parcel to be annexed sign an annexation petition." *Id.* The three procedures are referred to as expedited type-1, type-2, and type-3 annexations. *Id.* at ¶ 5.

{¶ 3} This appeal involves a type-2 annexation, which is governed by R.C. 709.023. In a type-2 annexation, "the residents of the territory become residents of both the township and the municipality, subject to the taxes of both, and potentially able to receive services from either." *Butler Twp. Bd. of Trustees* at ¶ 7 (citing R.C. 709.023(H)). A type-2 annexation petition must be filed with the clerk of the board of county commissioners. R.C. 709.023(B). After the petition is filed, the municipal corporation to which annexation is proposed must adopt an ordinance or resolution specifying what services it will provide to the territory proposed for annexation and when it will provide them. R.C. 709.023(C). A township or municipal corporation that opposes the proposed annexation may file objections

with the board. R.C. 709.023(D). If objections are filed, the board must "review [the petition] to determine if each of the following conditions" are satisfied:

> (1)　　The petition meets all the requirements set forth in, and was filed in the manner provided in, section 709.021 of the Revised Code.
>
> (2)　　The persons who signed the petition are owners of the real estate located in the territory proposed for annexation and constitute all of the owners of real estate in that territory.
>
> (3)　　The territory proposed for annexation does not exceed five hundred acres.
>
> (4)　　The territory proposed for annexation shares a contiguous boundary with the municipal corporation to which annexation is proposed for a continuous length of at least five per cent of the perimeter of the territory proposed for annexation.
>
> (5)　　The annexation will not create an unincorporated area of the township that is completely surrounded by the territory proposed for annexation.
>
> (6)　　The municipal corporation to which annexation is proposed has agreed to provide to the territory proposed for annexation the services specified in the relevant ordinance or resolution adopted under division (C) of this section.
>
> (7)　　If a street or highway will be divided or segmented by the boundary line between the township and the municipal corporation as to create a road maintenance problem, the municipal corporation to which annexation is proposed has agreed as a condition of the annexation to assume the maintenance of that street or highway or to otherwise correct the problem.

R.C. 709.023(E).

{¶ 4} A board of county commissioners must grant a petition that satisfies all the conditions and must deny a petition that does not. R.C. 709.023(F). Although "[t]here is no appeal in law or equity from the board's entry of any resolution under this section," a party may request "a writ of mandamus to compel the board * * * to perform its duties * * *." R.C. 709.023(G).

## II. FACTUAL BACKGROUND

{¶ 5} In September 2017, the city filed a type-2 annexation petition with the county seeking approval to annex roughly 45.6 acres of territory located in Xenia Township. The city owns approximately 41.1 acres of the territory proposed for annexation, and its ownership interest consists of a narrow strip of land used for a bicycle path. The path runs outward from the city in a northeasterly direction, where it ends adjacent to the remaining roughly 4.5 acres of the territory proposed for annexation—a triangular-shaped parcel owned by Central State University. A report prepared by the city's staff explained that the city would benefit from the annexation by receiving income-tax revenue from Central State University's employees and contractors and that Central State University, in turn, would benefit by becoming a recipient of the city's services. Central State University consented to the city's proposal to annex the 4.5-acre parcel.

{¶ 6} The township trustees urged the county to deny the petition, which the county did after determining that the city's petition did not satisfy R.C. 709.023(E)(1), (4), (5), or (7). The city then filed an original action in the court of appeals requesting a writ of mandamus ordering the county to approve the petition. The court denied the county's motion for summary judgment, granted the city's motion for summary judgment, and issued the writ. The county has appealed. The Ohio Township Association has filed an amicus brief in support of the county, and the Ohio Municipal League has filed an amicus brief in support of the city.

## III. STANDARD OF REVIEW

{¶ 7} For a writ of mandamus to issue in a type-2 setting, the relator must establish that it has a clear legal right to the requested relief by showing that it satisfies the conditions necessary for annexation. *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, 97 N.E.3d 404, ¶ 26. If the relator can show that it satisfies the conditions, a board of county commissioners has a clear legal duty to approve the annexation. *Id.* Because R.C. 709.023(G) authorizes an action in mandamus, a court need not consider whether the relator lacks an adequate remedy at law. *Id.*

{¶ 8} This court exercises de novo review in an appeal from a grant of summary judgment. *Transtar Elec., Inc. v. A.E.M. Elec. Servs. Corp.*, 140 Ohio St.3d 193, 2014-Ohio-3095, 16 N.E.3d 645, ¶ 8. Summary judgment may be granted only when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) upon viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can reach only a conclusion adverse to the nonmoving party. *Id.*

## IV. ANALYSIS

{¶ 9} Our analysis proceeds in two parts. We first address the county's claim that a writ of mandamus is an improper vehicle to compel it to grant the city's petition. We then address the county's claim that the city's petition fails to satisfy the conditions specified in R.C. 709.023(E).

*A. Whether a writ of mandamus is a proper vehicle to compel the county to grant the city's petition*

{¶ 10} A writ of mandamus is a command directing the "performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." R.C. 2731.01. A writ cannot compel the exercise of a permissive act. *State ex rel. Hodges v. Taft*, 64 Ohio St.3d 1, 4, 591 N.E.2d 1186 (1992). Nor can

it "issue to control an officer's exercise of discretion, but it can be issued to compel him to exercise it when he has a clear legal duty to do so." *Id.*

{¶ 11} The county claims that mandamus does not lie because it applied its discretion under R.C. 709.023(E) in denying the city's petition. Because a board of county commissioners is a statutory creation, with only "such power and jurisdiction as are conferred expressly by statutory enactment," *State ex rel. Shriver v. Belmont Cty. Bd. of Commrs.*, 148 Ohio St. 277, 74 N.E.2d 248 (1947), paragraphs one and two of the syllabus, the county must locate its claimed discretionary powers in the text of division (E)'s seven conditions. We discern no such powers here. Division (E)'s seven conditions are tightly written legal rules requiring straightforward application, *see, e.g.*, R.C. 709.023(E)(3) ("The territory proposed for annexation [must] not exceed five hundred acres"), not open-ended standards permitting a "power of free decision or choice within certain legal bounds" or a "latitude of decision [to] decide[] questions * * * not expressly controlled by fixed rules of law," *Webster's Third New International Dictionary* 647 (1993) (defining "discretion"). Tellingly, the county does not develop an argument centered on division (E)'s seven conditions that shows otherwise.[1]

{¶ 12} Had the General Assembly intended to confer discretion on a board of county commissioners in a type-2 setting, it would not have been difficult to use wording to that effect. Under what we have termed the "traditional" method of annexation, *Sugarcreek Twp. v. Centerville*, 133 Ohio St.3d 467, 2012-Ohio-4649, 979 N.E.2d 261, ¶ 3, a board must consider whether "the general good of the

---

1. The county argues for the first time in its reply brief that it performed a ministerial act when it reviewed the petition, determined that it did not satisfy all of R.C. 709.023(E)'s conditions, and denied it. That argument is not only in tension with the county's claim in its merit brief that it exercised discretion in reviewing the petition, applying division (E), and denying the petition, *see Maloney v. Rhodes*, 45 Ohio St.2d 319, 322, 345 N.E.2d 407 (1976) (distinguishing a discretionary act from a ministerial act)—the argument is also tardy, *see Corrigan v. Illum. Co.*, 151 Ohio St.3d 85, 2017-Ohio-7555, 86 N.E.3d 287, ¶ 11, fn. 1 (disregarding an argument raised for the first time in a reply brief).

territory proposed to be annexed will be served" by the annexation, R.C. 709.033(A)(5). Interpreting virtually identical language found in R.C. 709.033's predecessor, we observed that such language presents a "question of fact within the discretion of the board." *In re Annexation of 118.7 Acres in Miami Twp. to Moraine*, 52 Ohio St.3d 124, 132, 556 N.E.2d 1140 (1990). Division (E)'s seven conditions do not contain this type of open-ended language.

{¶ 13} Turning from the statutory text to our caselaw, we observed in *Butler Twp. Bd. of Trustees* that S.B. 5 put "in place firm standards to govern the consideration of annexation petitions * * *." 112 Ohio St.3d 262, 2006-Ohio-6411, 858 N.E.2d 1193, at ¶ 8. And in *Natl. Lime & Stone*, we explained that when a type-2 annexation petition satisfies all seven of division (E)'s conditions, a board "has no discretion to deny the petition" and a writ of mandamus will issue. 152 Ohio St.3d 393, 2017-Ohio-8348, 97 N.E.3d 404, at ¶ 2. The boards in those two cases did not raise precisely the same argument that the county is raising here, but we see no reason why the logic of those two decisions does not apply here.

{¶ 14} The county next contends that mandamus does not lie because it performed all its statutorily imposed duties. It points to division (G), which provides that a party may pursue relief in mandamus to "compel the board of county commissioners to perform its duties under this section," R.C. 709.023(G). In the county's view, it performed its statutory duties when it reviewed the petition, determined that it does not comply with the statutory conditions, and adopted a resolution denying it. *See* R.C. 709.023(E) and (F).

{¶ 15} The county's argument fails under *Natl. Lime & Stone*. There, a board of county commissioners denied a mining company's type-2 annexation petition. The company then filed a complaint for a writ of mandamus in the court of appeals to compel the board to grant the petition, which the court of appeals dismissed. We reversed and granted the writ, determining that the company had satisfied division (E)'s conditions. As we explained, when a relator satisfies all the

statutory conditions, it establishes a "clear legal right to the requested relief and a clear legal duty on the part of the commissioners to provide it," meaning that a board "must grant the annexation." *Id.* at ¶ 32 (citing R.C. 709.023(F) and (G)). It follows from *Natl. Lime & Stone* that the county's performance of its three statutorily imposed duties does not, on its own, foreclose the possibility that the county could be compelled to grant the city's petition in a mandamus action. Indeed, if the county were correct here, we would not have reversed the court of appeals' judgment and granted the writ in *Natl. Lime & Stone*.

B. *Whether the city's petition satisfies the conditions of R.C. 709.023(E)*

{¶ 16} The county claims that the city's petition fails to satisfy four of the seven conditions specified in R.C. 709.023(E). We address the conditions in turn.

**1. Whether the city's petition satisfies R.C. 709.023(E)(1)**

{¶ 17} Under R.C. 709.023(E)(1), a petition must "meet[] all the requirements set forth in" and be "filed in the manner" prescribed by R.C. 709.021. R.C. 709.021(A) provides:

> When a petition signed by all of the owners of real estate in the unincorporated territory of a township proposed for annexation requests the annexation of that territory to a municipal corporation *contiguous* to that territory under one of the special procedures provided for annexation in sections 709.022, 709.023, and 709.024 of the Revised Code, the annexation proceedings shall be conducted under those sections to the exclusion of any other provisions of this chapter unless otherwise provided in this section or the special procedure section chosen.

(Emphasis added.)

{¶ 18} The word "contiguous" in R.C. 709.021(A) is undefined by statute, leading the county to argue that the word should be understood according to the contiguity principles we announced in *Middletown v. McGee*, 39 Ohio St.3d 284, 530 N.E.2d 902 (1988), a pre-S.B. 5 decision that addressed whether a territory proposed for annexation was contiguous with the annexing municipality. We observed in *McGee* that although "the law is unsettled as to what degree of touching is needed to fulfill the contiguity requirement," there "is general[] agree[ment] that some touching of the municipality and the territory to be annexed is required." *Id.* at 287. We explained that Ohio courts had looked with disfavor on the "use of connecting strips of land to meet the contiguity requirement when annexing outlying territory not otherwise connected to the municipality. Such annexations are usually referred to as 'strip, shoestring, subterfuge, corridor, and gerrymander annexations.' " *Id.*, quoting *Watson v. Doolittle*, 10 Ohio App.2d 143, 148-149, 226 N.E.2d 771 (6th Dist.1967). Applying these principles, we concluded that a section of the territory proposed for annexation, which included a strip of roadway that extended outward from the annexing municipality for several miles, could not lawfully be annexed, because it was "not sufficiently contiguous" to the municipality. *Id.* at 288.

{¶ 19} The county asserts that because R.C. 709.023(E)(1) incorporates R.C. 709.021, a type-2 annexation petition must conform to *McGee*'s contiguity principles. The city responds that the sole contiguity requirement in a type-2 setting lies in R.C. 709.023(E)(4), which requires that the territory proposed for annexation have a boundary contiguous with the municipal corporation of "at least five per cent" of the territory's perimeter. We conclude that *McGee* does not apply here.

{¶ 20} As *McGee* itself makes clear, the General Assembly had not, at the time we decided that case, defined the word "contiguous" for the purpose of applying Ohio's annexation statutes. That statutory silence led us to draw from the

caselaw in determining the minimum degree of touching necessary for a territory and an annexing municipality to be contiguous. *See id.* at 287.

{¶ 21} Here, in contrast, the General Assembly *has* defined the minimum degree of touching necessary in a type-2 setting. As set forth in R.C. 709.023(E)(4), the territory proposed for annexation must have a boundary contiguous to the annexing municipality for a "continuous length of at least five per cent" of the territory's perimeter. *See also Lawrence Twp. Bd. of Trustees v. Canal Fulton*, 185 Ohio App.3d 267, 2009-Ohio-6822, 923 N.E.2d 1180, ¶ 38-40 (5th Dist.) (rejecting the view that a type-2 annexation petition must satisfy contiguity requirements in addition to those prescribed by R.C. 709.023(E)(4)); 1 Gotherman, Babbitt & Lang, *Baldwin's Ohio Practice: Local Government Law—Municipal*, Section 2.19, at 3 (Sept. 2019) ("territory that is a 'balloon on a string' may nevertheless be annexed using the expedited type-2 annexation process provided that the territory shares a contiguous boundary with the municipal corporation for a continuous length of at least 5% of the perimeter of the territory"). It follows that applying *McGee*'s contiguity principles in a type-2 case would render meaningless the specific contiguity limitations embodied in R.C. 709.023(E)(4). *See In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 19 (disfavoring an interpretation that renders a statute meaningless); R.C. 1.47(B) ("The entire statute is intended to be effective").

{¶ 22} Another problem with the county's argument is that it is in tension with our decision in *Natl. Lime & Stone*, 152 Ohio St.3d 393, 2017-Ohio-8348, 97 N.E.3d 404. There, we considered whether each of the seven conditions applicable in a type-2 setting were satisfied. Not once did we refer to *McGee*'s contiguity principles in determining whether the territory proposed for annexation was contiguous with the annexing municipality. Instead, we simply performed the analysis prescribed by R.C. 709.023(E)(4), determining that the territory proposed for annexation was sufficiently contiguous because it "share[d] a contiguous

boundary of at least 5 percent of the territory's perimeter." *Natl Lime & Stone* at ¶ 30. To be sure, *Natl. Lime & Stone* does not squarely resolve the argument that the county raises here. But even so, it would be hard to characterize the above language of *Natl. Lime & Stone* as dicta because its contiguity analysis was essential to the judgment.[2]

{¶ 23} The county urges this court to apply *State ex rel. Overholser Builders, L.L.C. v. Clark Cty. Bd. of Commrs.*, 2d Dist. Montgomery No. 2007 CA 36, 2008-Ohio-6338, ¶ 37-39, a decision holding that *McGee*'s contiguity principles apply to type-1 annexation petitions filed under R.C. 709.022. But *Overholser Builders* does not apply here, because the city filed its annexation petition under R.C. 709.023, not R.C. 709.022.

{¶ 24} In summary, we hold that R.C. 709.023(E)(4) establishes the sole contiguity requirement in a type-2 setting. Because the county does not otherwise contend that the city's petition departs from R.C. 709.023(E)(1), we conclude that the petition satisfies the requirements of that provision.

## 2. Whether the city's petition satisfies R.C. 709.023(E)(4)

{¶ 25} Under R.C. 709.023(E)(4), the territory proposed for annexation must have a boundary contiguous with the municipal corporation of at least 5 percent of the territory's perimeter. The city attested to the court of appeals that the territory proposed for annexation has a perimeter of 36,302.11 feet and has a boundary contiguous with the city of 1,929.14 feet, equating to a shared boundary of roughly 5.31 percent of the territory's perimeter. For its part, the county attested that the territory proposed for annexation has a perimeter of 38,317.34 feet and has a boundary contiguous with the city of 1,929.14 feet, equating to a shared boundary of roughly 5.03 percent of the territory's perimeter. The court of appeals

---

2. Our decision in *Butler Twp. Bd. of Trustees* does not require a different result. There, we observed that "balloon-on-a-string annexations can be a significant problem." 112 Ohio St.3d 262, 2006-Ohio-6411, 858 N.E.3d 1193, at ¶ 40. But we did not hold in that case that they are unlawful under R.C. 709.023.

determined that there is no genuine issue of material fact about the petition's compliance with R.C. 709.023(E)(4) because, although the parties' numbers slightly diverge, they nevertheless establish that the shared boundary exceeds the 5 percent threshold.

{¶ 26} The county now points to a different category of evidence, urging us to consider the city's future plans for annexing additional territory. Specifically, the county cites a city report describing the city's future plan to annex roughly 159 acres of territory, at least some of which Central State University has an interest in. According to the county, if one were to account for the city's future annexation plans, the shared boundary would fall to 4.29 percent.

{¶ 27} The problem with the county's argument is twofold. First, Ohio law directs a board of county commissioners to review a petition to determine whether it satisfies R.C. 709.023(E)'s seven conditions, not a municipal corporation's intent to annex additional territory at some indeterminate point in the future. We decline the county's invitation to rewrite the statute by considering the city's future plans. *See State v. Hughes*, 86 Ohio St.3d 424, 427, 715 N.E.2d 540 (1999) ("In construing a statute, we may not add or delete words"). Second, the county's argument conflicts with the statement of facts that it and the city jointly filed below, which states, among other things, that the city's petition seeks to "annex 45.637 acres of territory, more or less, in Xenia Township to the City of Xenia."

{¶ 28} We conclude that the city's petition satisfies R.C. 709.023(E)(4)'s requirements.

### 3. Whether the city's petition satisfies R.C. 709.023(E)(5)

{¶ 29} Under R.C. 709.023(E)(5), the petition must show that the "annexation will not create an unincorporated area of the township that is completely surrounded by the territory proposed for annexation." The county claims that the city's petition does not satisfy this condition because the proposed annexation of the bicycle path would create two township islands. The first area,

known as the Green Parcel, is a triangular-shaped parcel that is bounded by the city on two sides, with the bicycle path running along the third side. The second, the Douglas Street area, is a quadrilateral-shaped group of parcels that are bounded by the city on three sides, with the bicycle path running along the fourth side.

{¶ 30} The city does not dispute that the proposed annexation would create two township islands. But it correctly points out that R.C. 709.023(E)(5) forbids only township islands that are "completely surrounded by the territory proposed for annexation," not islands that are created by the coupling of pre- and post-annexation boundaries. Here, "the territory proposed for annexation" would form merely one side of the triangular-shaped island and one side of the quadrilateral-shaped island.

{¶ 31} We conclude that the city's petition satisfies R.C. 709.023(E)(5)'s requirements.

### 4. Whether the city's petition satisfies R.C. 709.023(E)(7)

{¶ 32} R.C. 709.023(E)(7) provides that "[i]f a street or highway will be divided or segmented by the boundary line between the township and the municipal corporation as to create a road maintenance problem, the municipal corporation" must have "agreed as a condition of the annexation to assume the maintenance of that street or highway or to otherwise correct the problem."

{¶ 33} Although the city essentially replicated this language in its petition, during deliberations on the petition, one of the county commissioners inquired about the scope of the city's agreement. The city's attorney initially responded that the city would maintain portions of affected roads that crossed over the bicycle path but would not maintain any other portions of the roads, because the city would not have jurisdiction over the latter portions. The attorney later clarified this response, saying that the city would comply with "whatever legal requirements" regarding road maintenance would apply.

{¶ 34} The county claims that the attorney's statements invalidate the city's agreement to assume road-maintenance duties. But as the court of appeals

observed, R.C. 709.023(E)(7) provides that a municipal corporation must agree either to "assume the maintenance of th[e] street or highway *or* to otherwise correct the problem." (Emphasis added.) In light of the clause's disjunctive phrasing, it does not matter whether the attorney's statement undermined the city's promise to assume street-maintenance duties, because the city had agreed "to otherwise correct the problem," *id.*

{¶ 35} The county next argues that the city failed to present to the township or any agency an agreement concerning road-maintenance issues; however, the county cites no law that requires a municipal corporation to do this.

{¶ 36} Last, the county claims that the city had failed to correct road-maintenance problems arising from prior annexations. Thus, the argument runs, the city will fail to correct problems arising from the proposed annexation. This argument is speculative, and even if true, it fails to establish a genuine issue of material fact concerning whether the city in fact agreed in its petition to correct road-maintenance-related problems.

{¶ 37} We conclude that the city's petition satisfies R.C. 709.023(E)(7)'s requirements.

## V. CONCLUSION

{¶ 38} For the foregoing reasons, we affirm the judgment of the court appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Donnette A. Fisher, Director of Law, for appellee.

Stephen K. Haller, Greene County Prosecuting Attorney, and Elizabeth A. Ellis, Assistant Prosecuting Attorney, for appellants.

Frost, Brown, Todd, L.L.C., Philip K. Hartmann, Yazan S. Ashrawi, and Christopher D. Thomas; and Garry E. Hunter, General Counsel, urging affirmance for amicus curiae Ohio Municipal League.

Brosius, Johnson & Griggs, L.L.C., Peter N. Griggs, Julia E. Donnan, and Jennifer L. Huber, urging reversal for amicus curiae Ohio Township Association.

_____