[Cite as *State ex rel. Young v. Ducro*, 2020-Ohio-5471.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO ex rel. D. MICHAEL YOUNG, et al., | : | **PER CURIAM OPINION** |
| | : | |
| Relators, | : | **CASE NO. 2020-A-0009** |
| | : | |
| - vs - | : | |
| J.P. DUCRO IV, MEMBER BOARD OF COMMISSIONERS OF ASHTABULA COUNTY, OHIO, et al., | : | |
| | : | |
| Respondents. | | |

Original Action for Writ of Mandamus.

Judgment: Petition granted; writ issued.

*Michael E. Hamper, III*, 531 East Beech Street, P.O. Box 346, Jefferson, OH 44047 (For Relators).

*Cecilia M. Cooper*, Ashtabula County Prosecutor, and *Catherine R. Colgan*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Respondents).

PER CURIAM.

{¶1} This original action in mandamus is presently before this court for final determination of a petition for writ of mandamus filed by relators, D. Michael Young and Carol Young ("the Youngs") against respondents, three members of the Board of County Commissioners of Ashtabula County, Ohio, in their official capacities ("the Board"). The Youngs seek a judicial determination by this court as to whether the Board should be compelled to grant the Youngs' annexation petition.

**Expedited Type-2 Annexation**

{¶2}   Annexation is strictly a statutory process in the state of Ohio.  *In re Petition to Annex 320 Acres to the Village of S. Lebanon*, 64 Ohio St.3d 585, 591 (1992).  In 2001, with the passage of Am.Sub.S.B. No. 5 ("Senate Bill 5"), the General Assembly created three new procedures for expedited annexation when all property owners of a parcel to be annexed have signed an annexation petition.  *State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Cty. Commrs.*, 112 Ohio St.3d 262, 2006-Ohio-6411, ¶3.  "An examination of Senate Bill 5 indicates that some of the overall goals of the bill—including those of the new expedited procedures—were to promote consistency in decision-making by putting in place firm standards to govern the consideration of annexation petitions, to improve the efficiency of annexations by creating the expedited processes, and to promote cooperation among local governments."  *Id.* at ¶8.

{¶3}   The expedited procedures, found in R.C. Chapter 709, eliminate any discretion on the part of the boards of county commissioners by requiring the boards to grant an annexation petition when it complies with certain statutory requirements.  *Sugarcreek Twp. v. Centerville*, 133 Ohio St.3d 467, 2012-Ohio-4649, ¶5.  This is in line with the long-held state policy of encouraging annexation by municipalities of adjacent territory.  *Id*. at ¶3, citing *Middletown v. McGee*, 39 Ohio St.3d 284, 285 (1988).

{¶4}   The annexation involved in the case sub judice is the second type of expedited procedure, governed by R.C. 709.023, which is commonly referred to as an "expedited type-2" annexation.   An expedited type-2 annexation is "the special procedure of annexing land into a municipal corporation when, subject to division (H) of this section, the land also is not to be excluded from the township under section 503.07

2

of the Revised Code." R.C. 709.023(A). "Therefore, when property is annexed to a municipality under R.C. 709.023, the residents of the territory become residents of both the township and the municipality, subject to the taxes of both, and potentially able to receive services from either." *Butler Twp.*, *supra*, at ¶7.

{¶5} The timeline, procedural, and substantive requirements for an expedited type-2 annexation petition are all set forth in the statute, as follows.

{¶6} The petition is to be filed in the office of the clerk of the board of county commissioners, at which time "the clerk shall cause the petition to be entered upon the board's journal at its next regular session." R.C. 709.023(B).

{¶7} In the meantime, the legislative authority of the municipal corporation to which annexation is proposed is directed to take each of the following two actions:

{¶8} First, within 20 days after the date the petition is filed, the municipal corporation "shall adopt an ordinance or resolution stating what services the municipal corporation will provide, and an approximate date by which it will provide them, to the territory proposed for annexation, upon annexation." R.C. 709.023(C). Upon annexation, the municipal corporation is entitled, in its sole discretion, to provide services in addition to the services described in this ordinance or resolution. *Id.*

{¶9} Second, within 25 days after the date the petition is filed, the municipal corporation "may adopt and file with the board of county commissioners an ordinance or resolution consenting or objecting to the proposed annexation." R.C. 709.023(D). However, "[a]n objection to the proposed annexation shall be based solely upon the petition's failure to meet the conditions specified in division (E) of this section." *Id.* Each township, any portion of which is included in the territory proposed for annexation, is also permitted to file an ordinance or resolution with the board. *Id.*

3

{¶10} If the municipal corporation and each of the affected townships consent to the annexation, the board of county commissioners shall grant the petition. *Id.* The failure to timely consent or object shall be deemed a consent. *Id.*

{¶11} "If, instead, the municipal corporation or any of those townships files an ordinance or resolution that objects to the proposed annexation, the board of county commissioners shall proceed as provided in division (E) of this section." *Id.*

{¶12} R.C. 709.023(E) provides that, "[u]nless the petition is granted under division (D) of this section, not less than thirty or more than forty-five days after the date that the petition is filed, the board of county commissioners shall review it to determine if each of the following conditions has been met:

> (1) The petition meets all the requirements set forth in, and was filed in the manner provided in, section 709.021 of the Revised Code.
>
> (2) The persons who signed the petition are owners of the real estate located in the territory proposed for annexation and constitute all of the owners of real estate in that territory.
>
> (3) The territory proposed for annexation does not exceed five hundred acres.
>
> (4) The territory proposed for annexation shares a contiguous boundary with the municipal corporation to which annexation is proposed for a continuous length of at least five per cent of the perimeter of the territory proposed for annexation.
>
> (5) The annexation will not create an unincorporated area of the township that is completely surrounded by the territory proposed for annexation.
>
> (6) The municipal corporation to which annexation is proposed has agreed to provide to the territory proposed for annexation the services specified in the relevant ordinance or resolution adopted under division (C) of this section.
>
> (7) If a street or highway will be divided or segmented by the boundary line between the township and the municipal corporation as to create a road maintenance problem, the municipal corporation

4

to which annexation is proposed has agreed as a condition of the annexation to assume the maintenance of that street or highway or to otherwise correct the problem.

{¶13} If the board of county commissioners "finds that each of the conditions specified in division (E) of this section has been met, [it] shall enter upon its journal a resolution granting the annexation." R.C. 709.023(F).

{¶14} On the other hand, as occurred here, "if the board of county commissioners finds that one or more of the conditions specified in division (E) of this section have *not* been met, it shall enter upon its journal a resolution that states which of those conditions the board finds have not been met and that denies the petition." *Id.* (emphasis added).

{¶15} "There is no appeal in law or equity from the board's entry of any resolution under this section, but any party may seek a writ of mandamus to compel the board of county commissioners to perform its duties under this section." R.C. 709.023(G).

**The Youngs' Annexation Petition**

{¶16} On October 9, 2019, the Youngs filed an expedited type-2 annexation petition, pursuant to R.C. 709.021 and 709.023, with the Clerk for the Ashtabula County Board of Commissioners ("the Annexation Petition"). The Youngs seek to annex a parcel of land situated in Orwell Township ("the Township") into the contiguous Village of Orwell ("the Village"). The parcel of land ("the Property") is approximately 1.25 acres; known as 2482 U.S. Route 322, Orwell, Ohio 44076; and identified as Permanent Parcel Number 38-014-00-007-00 in the Ashtabula County Recorder's General Index. The Youngs jointly own the Property, on which they are building a single-family home for their personal use and enjoyment.

5

{¶17} On November 3, 2019, at a special emergency meeting, the Village Council passed two resolutions:

- **Resolution 19-11-01R**, issued pursuant to division (C) of 709.023, resolved that the Village does not intend to provide services to the Property.

- **Resolution 19-11-02R**, issued pursuant to division (D) of 709.023, objected to the Annexation Petition and resolved that, even if the Board approves the Annexation Petition, the Village is not willing to provide services to the Property.

On November 4, 2019, the Village filed both resolutions with the Clerk of the Ashtabula County Board of Commissioners.

{¶18} At a meeting held on or about November 19, 2019, the Board passed Resolution 2019-386, denying the Annexation Petition on the grounds that the Youngs had not satisfied the requirement stated in R.C. 709.023(E)(6), to wit: "The municipal corporation to which annexation is proposed has agreed to provide to the territory proposed for annexation the services specified in the relevant ordinance or resolution adopted under division (C) of this section."

### The Youngs' Petition for Writ of Mandamus

{¶19} On February 7, 2020, the Youngs filed with this court the instant petition for a writ of mandamus, seeking to compel the Board to grant the Annexation Petition on the basis that all of the requirements specified in R.C. 709.023(E) have been met.

{¶20} The Youngs claim they have a clear legal right to approval of the Annexation Petition, as provided in R.C. 709.023. They assert three Counts in their petition for writ of mandamus:

> "This Court should issue a writ of mandamus directed to the Respondents ordering them to enter a Resolution granting Relators' Petition for Annexation – Expedited Type 2 and vacating Resolution Number 2019-386 because…

6

[Count 1] …the Village of Orwell did not timely object.

[Count 2] …the Village of Orwell did not object on proper grounds.

[Count 3] … R.C. §709.023(E) was met."

{¶21} On March 9, 2020, the Board moved for summary judgment on the Youngs' petition. The Youngs responded on March 30, 2020, and filed a cross-motion for summary judgment. The Board has not responded to the cross-motion.

**Summary Judgment Standard**

{¶22} As provided in Civ.R. 56(C), before summary judgment may be granted it must be determined that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Levin v. Schremp*, 73 Ohio St.3d 733, 734 (1995) (citation omitted).

{¶23} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.* If this initial burden is met, the nonmoving party then bears the reciprocal burden to set forth specific facts demonstrating there is a genuine issue for trial. If the nonmovant fails to do so, summary judgment will be entered against the nonmoving party. *Id.*, citing Civ.R. 56(E).

7

**Writ of Mandamus Standard**

{¶24} "For a writ of mandamus to issue in a type-2 setting, the relator must establish that it has a clear legal right to the requested relief by showing that it satisfies the conditions necessary for annexation. If the relator can show that it satisfies the conditions, a board of county commissioners has a clear legal duty to approve the annexation." *State ex rel. City of Xenia v. Greene Cty. Bd. of Commrs.*, ___ Ohio St.3d ___, Slip Opinion No. 2020-Ohio-3423, ¶7 ("*Xenia III*"), citing *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, ¶26. "Because R.C. 709.023(G) authorizes an action in mandamus, a court need not consider whether the relator lacks an adequate remedy at law." *Id.; see also* R.C. 709.023(A) ("The owners who sign this petition by their signature expressly waive their right to appeal in law or equity from the board of county commissioners' entry of any resolution under this section * * *.").

**Counts One and Two**

{¶25} In Counts One and Two, the Youngs claim this court should issue a writ of mandamus because the Village did not timely object within 25 days of the date the Annexation Petition was filed and because the Village did not object on proper grounds. *See* R.C. 709.023(D).

{¶26} This court, in an original action on mandamus, cannot review whether the Village's objection was timely or based upon proper grounds. We have jurisdiction only to determine whether the Youngs have a clear legal right to approval of the Annexation Petition and, reciprocally, whether the Board has a clear legal duty to approve it. In other words, even if the parties agreed that the alleged errors were made by the Village, the Youngs are only entitled to relief if they can show the Annexation Petition satisfied

8

each of the statutory requirements. *State ex rel. City of Xenia v. Greene Cty. Bd. of Commrs.*, 2d Dist. Greene No. 2018CA0021, 2019-Ohio-4801, ¶13 ("*Xenia I*"), citing *Natl. Lime & Stone, supra*, at ¶26.

{¶27} Because a writ of mandamus cannot issue, as a matter of law, on Count One or Count Two of the Youngs' petition, both counts are dismissed for failure to state a claim upon which relief can be granted. *See id.* at ¶15, quoting *State ex rel. Williams v. Trim*, 145 Ohio St.3d 204, 2015-Ohio-3372, ¶11 ("This court has the authority to sua sponte dismiss an original action claim 'when * * * the claimant obviously cannot prevail on the facts alleged in the complaint.'").

### Count Three

{¶28} The parties' competing motions for summary judgment regarding Count Three disagree as to whether the statutory requirement for annexation found in R.C. 709.023(E)(6) was satisfied as a matter of law.

{¶29} As noted above, pursuant to subsection (E)(6), the Board was required to review whether the Village had agreed to provide to the Property the services specified in the resolution adopted under division (C) of R.C. 709.023. In turn, the resolution adopted under division (C) was required to state what services the Village will provide to the Property and an approximate date by which it will provide them.

{¶30} **Resolution 19-11-01R**—the resolution regarding services that was adopted by the Village pursuant to division (C) of R.C. 709.023—resolved that the Village does not intend to provide any services to the Property:

> The Village of Orwell council finds and determines that the annexation petition filed by D. Michael Young and Carol Young for certain property located in Orwell Township and as requested by D. Michael Young and Carol Young for annexation into the Village of Orwell as applied for to the Ashtabula County Commissioners shall

9

be provided the following services by the Village of Orwell, namely: NO SERVICES INTENDED TO BE PROVIDED.

{¶31} In the Village's subsequent **Resolution 19-11-02R**—in which the Village objected to the Annexation Petition—the Village resolved that, if the Board grants the Annexation Petition over the Village's objection, the Village is not willing to provide any services to the Property:

> The Village of Orwell council finds and determines and submits its objection of the annexation petition filed by D. Michael Young and Carol Young for certain property located in Orwell Township and as requested by D. Michael Young and Carol Young for annexation into the Village of Orwell as applied for to the Ashtabula County Commissioners on or about October 9, 2019 and that said real estate, if approval of said annexation by the Ashtabula County Commissioners is made over the objections of the Village of Orwell, *said Village of Orwell is not willing to provided [sic] services* to the real estate or property of D. Michael Young and Carol Young herein. [Emphasis added.]

{¶32} The parties' dispute centers on whether a municipal corporation to which annexation is proposed must agree to provide services to a territory proposed for annexation in order for an annexation petition to satisfy the requirement of subsection (E)(6). A review of reported case law indicates this does appear to be an issue of first impression under the current statutory scheme.

{¶33} The Board asserts the Supreme Court of Ohio previously indicated that subsection (E)(6) requires an agreement for provision of services by the municipal corporation to the territory proposed to be annexed. For this assertion, they rely on *Natl. Lime & Stone*.

{¶34} In *Natl. Lime & Stone*, the primary issue was "whether a railroad that holds land within a territory proposed for annexation is an 'owner' as defined in R.C. 709.02 such that it must consent to the annexation *or* whether its property interest falls within an exception in that definition * * *." *Id.* at ¶1 (emphasis sic). The only reference in the

10

opinion to R.C. 709.023(E)(6) is found in the following paragraph, which discusses the statutory requirements that were unquestionably satisfied by the relator's annexation petition:

> In addition, the plat shows that the annexation will not create an unincorporated area of the township that is completely surrounded by the territory proposed for annexation. R.C. 709.023(E)(5). The city of Marion has identified and agreed to provide ordinary city services to the territory proposed for annexation and agreed to zone the territory for mineral extraction, while also providing for a buffer zone between the mineral-extraction activity and adjacent township land that is zoned for residential use. *See R.C. 709.023(C) (buffer zone) and 709.023(E)(6) (city must agree to provide services).* The city has also determined that the street known as Linn Hipsher Road will not be divided or segmented by the boundary in a way that creates a road-maintenance problem. R.C. 709.023(E)(7).

*Id.* at ¶31 (emphasis added).

{¶35} This abbreviated reference was not dispositive of the issue raised in *Natl. Lime & Stone.* Nor is it dispositive to the issue raised in the case sub judice. Subsection (E)(6) states that the municipal corporation "has agreed" to provide services—but not all services, or any particular services—rather, it "has agreed" to provide the services that were specified in the relevant resolution or ordinance. Here, no services were specified in the Village's resolution. Thus, pursuant to that resolution, there were no services the Village could have "agreed" to provide.

{¶36} The Board further directs us to the Second District case of *State ex rel. City of Xenia v. Greene County Bd. of Commrs.*, 2d Dist. Greene No. 2018CA0021, 2019-Ohio-4805 ("*Xenia II*"). Again, however, whether subsection (E)(6) was satisfied was not an issue raised or determined in that case. *See id.* at ¶3 & ¶38.

{¶37} The Board argues that because there was a disagreement between the Youngs and the Village as to what services would or should be provided to the Property,

11

the Board "had the task of determining what effect that disagreement had on the petition in terms of the requirements of 709.023(E)." However, there is no provision or direction in the statute relating to any disagreement between petitioners and municipal corporations. The statute is in place to expedite this particular type of annexation process, and the boards of county commissioners are only to determine whether the statutory requirements have been met.

{¶38} The Board further argues that the Youngs' interpretation of the statute (according to which, such a disagreement is not relevant to a review of an expedited type-2 annexation petition) renders subsection (E)(6) moot because it would force a municipality to offer services to any petitioner in order to avoid future litigation. Thus, the Board contends, it "rightly determined that approving the petition in this case, over the Village's objection, would cause further dispute and fail to achieve efficient expedited-type 2 annexations as intended by the legislature." Again, however, there is no provision or direction in the statute for a board of county commissioners to deny a petition in order to avoid future litigation or dispute. Doing so would be an exercise of discretion the Board does not have with this type of annexation.

{¶39} We conclude the Board has not met their burden on summary judgment to establish they are entitled to judgment on this issue as a matter of law. As to Count Three, the Board's motion for summary judgment is denied.

{¶40} The Youngs, on the other hand, contend the relevant statutory language means that provision of services by the municipal corporation is *not* a prerequisite to the granting of an expedited type-2 annexation petition by the board of county commissioners. For the following reasons, we conclude that this reading of the statute is correct.

12

{¶41} First, consider that R.C. 709.023(D) requires a board to grant an expedited type-2 annexation petition when the municipality and township consent to the annexation by an ordinance or resolution that is filed with the board. The board is also required to grant an expedited type-2 annexation when the municipality or township fails to timely consent or object to the proposed annexation. *Id.* Accordingly, it is possible for an expedited type-2 annexation to be approved by a board in those two situations even after a municipality has resolved, pursuant to division (C), not to provide any services to the territory.

{¶42} Further, subsection (E)(6) does not condition the annexation upon the municipality providing services to the territory. An example of a condition to annexation is found in subsection (E)(7). When considered together, as we must under general principles of statutory construction, the intent and impact of each is quite apparently different regarding what is required of a petitioner:

> (6) The municipal corporation to which annexation is proposed *has agreed to provide* to the territory proposed for annexation the services specified in the relevant ordinance or resolution adopted under division (C) of this section.

> (7) If a street or highway will be divided or segmented by the boundary line between the township and the municipal corporation as to create a road maintenance problem, the municipal corporation to which annexation is proposed *has agreed as a condition of the annexation* to assume the maintenance of that street or highway or to otherwise correct the problem. * * *

R.C. 709.023(E) (emphasis added).

{¶43} Again, subsection (E)(6) does not state that the municipality is required to provide services to the territory. Nor, for that matter, does division (C). Rather, subsection (E)(6) unambiguously states that the municipal corporation has agreed to

13

provide the services that are specified in the resolution adopted under division (C). Here, no services were specified in that resolution.

{¶44} Requiring a municipal corporation to agree to provide some services in order for a board to grant an expedited type-2 annexation petition appears antithetical to the purpose of the statute, and is an interpretation not permitted under the rules of statutory construction. *See Rosette v. Countrywide Home Loans, Inc.*, 105 Ohio St.3d 296, 2005-Ohio-1736, ¶12 (citations omitted) ("In construing a statute, a court must ascertain the intent of the legislature."); *Rice v. CertainTeed Corp.*, 84 Ohio St.3d 417, 419 (1999), quoting *State ex rel. Richard v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund*, 69 Ohio St.3d 409, 411 (1994) ("To this end, we must first look to the statutory language and the 'purpose to be accomplished.'"); *State ex rel. McDulin v. Indus. Comm. of Ohio*, 89 Ohio St.3d 390, 392 (2000) (citation omitted) (a court cannot "read into a statute words that are not contained therein"); *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Educ.*, 74 Ohio St.3d 543, 545 (1996) (citation omitted) ("If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary."); *Natl. Lime & Stone*, *supra*, at ¶14 (citation omitted) ("Our role is to evaluate the statute as a whole and to interpret it in a manner that will give effect to every word and clause, avoiding a construction that will render a provision meaningless or inoperative.").

{¶45} Finally, any or all services not provided to the territory by the municipal corporation will continue to be provided by the township. *See* R.C. 709.023(A) ("the land also is not to be excluded from the township"); R.C. 709.023(H) (unless otherwise provided in an annexation agreement or a cooperative economic development agreement, "territory annexed into a municipal corporation pursuant to this section shall

14

not at any time be excluded from the township under [R.C. 503.07] and, thus, remains subject to the township's real property taxes"); and *Butler Twp., supra*, at ¶7 ("when property is annexed to a municipality under R.C. 709.023, the residents of the territory become residents of both the township and the municipality, subject to the taxes of both, and potentially able to receive services from either").

{¶46} We conclude that R.C. 709.023(E)(6) does not require a board of county commissioners to deny an expedited type-2 annexation petition when a municipal corporation has resolved that it does not intend to provide services to the territory proposed to be annexed. Rather, the apparent purpose of adopting a statement of services under division (C) is providing notice to the petitioners of what services they will or will not receive if their property is annexed.

{¶47} This conclusion is further bolstered by a review of case law relating to annexation petitions over which a board of county commissioners *does* have discretion. In those situations, it has been held that, "'unless it is shown that [a city] is unable to provide the necessary services that a city must provide, the commissioners may not use services as a justification to deny annexation.'" *Moore v. Lake Cty. Bd. of Commrs.*, 11th Dist. Lake No. 98-L-247, 2002-Ohio-2978, ¶14, quoting *Smith v. Granville Twp. Bd. of Trustees*, 81 Ohio St.3d 608, 615 (1998). Granted, *Moore*, *Smith*, and similar cases are responding to a board's decision as to whether annexation was "for the good of the territory to be annexed." The reasoning applies even more so, however, to these expedited type-2 annexation petitions where, even if a municipality is unable or unwilling to provide necessary services, the annexed territory will still receive those services from the township. Accordingly, a board of county commissioners should not use services as a justification to deny annexation.

15

{¶48} Historically and consistently, "[i]n enacting the statutes governing annexation, one of the intentions of the legislature [is] 'to give an owner of property freedom of choice as to the governmental subdivision in which he desires his property to be located.'" *Moore, supra*, at ¶8, quoting *Middletown v. McGee*, 39 Ohio St.3d 284, 286 (1988); *accord Smith, supra*, at 614 ("it is apparent that the spirit and purpose of the annexation laws of Ohio are to encourage annexation to municipalities and to give weight to the requests of property owners relative to the governmental subdivision in which they desire their property to be located").

{¶49} At the same time, the General Assembly has increasingly and "substantially curtailed the discretion to be exercised by boards of county commissioners in [annexation] proceedings." *Lariccia v. Mahoning Cty. Bd. of Commrs.*, 38 Ohio St.2d 99, 101 (1974). As to the expedited type-2 annexation petition, the board's discretion has been entirely eliminated. *Xenia III, supra*, at ¶12 ("Had the General Assembly intended to confer discretion on a board of county commissioners in a type-2 setting, it would not have been difficult to use wording to that effect.").

{¶50} The Youngs have met their summary judgment burden by demonstrating that no material factual dispute exists and that they are entitled to judgment on this issue as a matter of law. The Board has not responded to the Youngs' cross-motion for summary judgment. Accordingly, summary judgment is appropriately granted to the Youngs on Count Three of their petition for writ of mandamus.

## Conclusion

{¶51} Counts One and Two of the Youngs' petition for writ of mandamus are dismissed, sua sponte, for failure to state a claim upon which relief can be granted.

16

Summary judgment is granted to the Youngs on Count Three of their petition as a matter of law.

{¶52} The Youngs have demonstrated that they have a clear legal right to approval of the Annexation Petition. Therefore, we grant the Youngs' petition for writ of mandamus. We issue this writ of mandamus to the Board to enter upon its journal a resolution granting the Youngs' Annexation Petition.

**Postscript**

{¶53} The nature of annexation and the historical preferences noted above have led to the adoption of the expedited petition process. However, R.C. 709.023 does not specifically address a situation where the municipality does not actually want the territory that is proposed to be annexed and/or does not want to provide services to that territory. With that being said, following a board's review and granting of a petition under this statute, there are two more steps before annexation is complete. These steps provide a municipality with a final opportunity to accept or reject a proposed annexation. Thus, the procedural journey of the Youngs' Annexation Petition does not end with this Court's writ and the Board's resolution.

{¶54} Once the Annexation Petition is granted, "the clerk of the board of county commissioners shall proceed as provided in division (C)(1) of section 709.033 of the Revised Code, except that no recording or hearing exhibits would be involved." R.C. 709.023(G). Thus, pursuant to R.C. 709.033(C)(1), "the clerk shall deliver a certified copy of the entire record of the annexation proceedings, including all resolutions of the board, signed by a majority of the members of the board, the petition, map, and all other papers on file * * * to the auditor or clerk of the municipal corporation to which annexation is proposed."

17

{¶55} Finally, the Annexation Petition must be laid before the Village Council, which is to either accept or reject the petition by resolution or ordinance:

> At the next regular session of the legislative authority of the municipal corporation to which annexation is proposed, * * * the auditor or clerk of that municipal corporation shall lay the resolution of the board granting the petition and the accompanying map or plat and petition before the legislative authority.
>
> The legislative authority, by resolution or ordinance, then shall accept or reject the petition for annexation.
>
> If the legislative authority fails to pass an ordinance or resolution accepting the petition for annexation within a period of one hundred twenty days after those documents are laid before it by the auditor or clerk, the petition for annexation shall be considered rejected by the legislative authority.

R.C. 709.04; *see also* R.C. 709.021(C) (providing, inter alia, that R.C. 709.04 applies to the granting of an expedited type-2 annexation) and Ohio Bill Analysis, 2001 S.B. 5, citing R.C. 709.021(C) ("as with the regular statutory annexation procedures, before any annexation is complete, the legislative authority of the municipal corporation to which annexation is proposed must vote to accept the landowners' petition for annexation").

{¶56} **PETITION GRANTED**.


TIMOTHY P. CANNON, P.J., THOMAS R. WRIGHT, J., MATT LYNCH, J., concur.