[Cite as *State ex rel. Hollo v. Cuyahoga Cty. Council*, 2023-Ohio-4550.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE EX REL., JOSEPH P. HOLLO
AND SUZANNE C. HOLLO, :

     Relators, :

                       No. 113155

     v. :

CUYAHOGA COUNTY COUNCIL, :

     Respondent. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** COMPLAINT DISMISSED
**DATED:** December 8, 2023

---

Writ of Mandamus
Motion No. 568405
Order No. 569514

---

### *Appearances:*

Law Office of Harold E. Farling, LLC, and Harold E. Farling, *for relators*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Matthew T. Fitzsimmons IV, Assistant Prosecuting Attorney, *for respondent*.

MARY J. BOYLE, J.:

{¶ 1} Relators, Joseph P. Hollo and Suzanne C. Hollo, seek a writ of mandamus directing respondent, the Cuyahoga County Council ("County Council"),

to approve a petition for annexation pursuant to R.C. 709.023 that sought to annex a 72-acre parcel of property into the city of Berea. For the reasons that follow, we grant County Council's motion to dismiss and dismiss the complaint.

**I. Background**

{¶ 2} On September 7, 2023, relators filed a complaint for writ of mandamus. There, they alleged that they own a 72.552-acre parcel of land situated in Olmsted Township that is abutted on three sides by property located within the city of Berea. Relators filed petitions for expedited annexation of the property with the Berea City Council and County Council pursuant to R.C. 709.023.

{¶ 3} The Berea City Council passed an ordinance, Ordinance No. 2023-32, on June 26, 2023, objecting to the petition and stating that the city of Berea would not provide any services to the territory and would not maintain an adjacent road if annexation created a segmentation or road maintenance issue. Citing to the Berea ordinance of the nonprovision of services and a potential road service and maintenance issue, County Council denied the petition by resolution on July 24, 2023. Relators then filed the instant complaint.

{¶ 4} On October 6, 2023, County Council filed a motion to dismiss. There, it argued that relators were not entitled to relief in mandamus because their petition did not satisfy all the requirements for annexation found in R.C. 709.023(E). Specifically, County Council argued that relators failed to satisfy R.C. 709.023(E)(6) pertaining to an ordinance passed by the municipality that states what services would be provided to the territory. County Council did not address or advance

arguments related to any potential road issue under R.C. 709.023(E)(7). After an extension of time, relators filed a brief in opposition on October 26, 2023. Relators argued that County Council had no discretion to deny their petition because the statute does not require a municipality to provide a minimum number of services in order to satisfy R.C. 709.023(E)(6), only that a municipality must pass an ordinance designating what services it would provide. County Council filed a reply brief on November 1, 2023, reiterating its previous arguments.

## II. Law and Analysis

### A. Requirements for a Writ of Mandamus

{¶ 5} To be entitled to a writ of mandamus, a relator is required to show "that it has a clear legal right to the requested relief by showing that it satisfies the conditions necessary for annexation." *State ex rel. Xenia v. Greene Cty. Bd. of Commrs.*, 160 Ohio St.3d 495, 2020-Ohio-3423, 159 N.E.3d 262, ¶ 7, citing *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, 97 N.E.3d 404, ¶ 26. For decisions pertaining to type-2 annexation proceedings, if a petitioner has satisfied the seven requirements in R.C. 709.023(E), then a board of county commissioners, or in this case, County Council, has no discretion to deny the petition. *Id*. at ¶ 4. Mandamus is an appropriate means of requiring a county board of commissions to fulfill these obligations imposed by statute. *Id*., citing R.C. 709.023(G).

{¶ 6} The case is before this court on respondent's motion to dismiss. Pursuant to Civ.R. 12(B)(6), a court can dismiss a mandamus action "for failure to

state a claim upon which relief can be granted if, after all factual allegations of the complaint are presumed true and all reasonable inferences are made in the relator's favor, it appears beyond doubt that he can prove no set of facts entitling him to the requested writ of mandamus." *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 9.

## B. Type-2 Annexation

{¶ 7} Ohio's statutory scheme for annexation includes three expedited procedures, including a "type-2" annexation under R.C. 709.023. In this type of annexation, all the landowners within the territory proposed for annexation agree to the annexation and "'the residents of the territory become residents of both the township and the municipality, subject to the taxes of both, and potentially able to receive services from either.'" *Xenia* at ¶ 3, quoting *State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.,* 112 Ohio St.3d 262, 2006-Ohio-6411, 858 N.E.2d 1193, ¶ 7, citing R.C. 709.023(H).

{¶ 8} Under this procedure, in the absence of consent of the municipality, a board of county commissioners must approve a type-2 annexation petition where the petition complies with the seven conditions found in R.C. 709.023(E). If the petition fails to meet any one of these conditions, it must be denied. *Xenia*, 160 Ohio St.3d 495, 2020-Ohio-3423, 159 N.E.3d 262, at ¶ 4 ("A board of county commissioners must grant a petition that satisfies all the conditions and must deny a petition that does not."). These seven requirements are:

(1) The petition meets all the requirements set forth in, and was filed in the manner provided in, section 709.021 of the Revised Code.

(2) The persons who signed the petition are owners of the real estate located in the territory proposed for annexation and constitute all of the owners of real estate in that territory.

(3) The territory proposed for annexation does not exceed five hundred acres.

(4) The territory proposed for annexation shares a contiguous boundary with the municipal corporation to which annexation is proposed for a continuous length of at least five per cent of the perimeter of the territory proposed for annexation.

(5) The annexation will not create an unincorporated area of the township that is completely surrounded by the territory proposed for annexation.

(6) The municipal corporation to which annexation is proposed has agreed to provide to the territory proposed for annexation the services specified in the relevant ordinance or resolution adopted under division (C) of this section.

(7) If a street or highway will be divided or segmented by the boundary line between the township and the municipal corporation as to create a road maintenance problem, the municipal corporation to which annexation is proposed has agreed as a condition of the annexation to assume the maintenance of that street or highway or to otherwise correct the problem. As used in this section, "street" or "highway" has the same meaning as in section 4511.01 of the Revised Code.

R.C. 709.023(E)(1)-(7).

{¶ 9} A municipality has a statutory duty under this provision as well.

R.C. 709.023(C) states that within 20 days of the submission of an application for annexation,

the legislative authority of the municipal corporation to which annexation is proposed shall adopt an ordinance or resolution stating what services the municipal corporation will provide, and an

approximate date by which it will provide them, to the territory proposed for annexation, upon annexation. The municipal corporation is entitled in its sole discretion to provide to the territory proposed for annexation, upon annexation, services in addition to the services described in that ordinance or resolution.

A municipality may pass an ordinance objecting to the proposed annexation, but objections are limited to a failure to meet one of the above requirements in R.C. 709.023(E). R.C. 709.023(D). The county commissioners must then undertake their statutory duty:

> If the municipal corporation and each of those townships timely files an ordinance or resolution consenting to the proposed annexation, the board at its next regular session shall enter upon its journal a resolution granting the proposed annexation. *If, instead, the municipal corporation or any of those townships files an ordinance or resolution that objects to the proposed annexation, the board of county commissioners shall proceed as provided in division (E) of this section.* Failure of the municipal corporation or any of those townships to timely file an ordinance or resolution consenting or objecting to the proposed annexation shall be deemed to constitute consent by that municipal corporation or township to the proposed annexation.

(Emphasis added.) R.C. 709.023(D). However,

> Division (E)'s seven conditions are tightly written legal rules requiring straightforward application, *see, e.g.*, R.C. 709.023(E)(3) ("The territory proposed for annexation [must] not exceed five hundred acres"), not open-ended standards permitting a "power of free decision or choice within certain legal bounds" or a "latitude of decision [to] decide[] questions * * * not expressly controlled by fixed rules of law," Webster's Third New International Dictionary 647 (1993) (defining "discretion").

*Xenia* at ¶ 11.

{¶ 10} In the present case, County Council rejected the petition because the Berea City Council voted to not provide any services to the territory. Berea City

Council also stated in the ordinance that it would not provide services for a roadway that bordered the property should this annexation create a road maintenance or service issue. County Council found that the petition did not meet the requirements in R.C. 709.023(E)(6) and 709.023(E)(7). However, in its motion to dismiss, County Council only addressed R.C. 709.023(E)(6) in any significant way. County Council does not support its argument that the petition does not satisfy R.C. 709.023(E)(7) except in passing and without any substantive analysis.[1] As such, this court will limit its analysis to whether the sixth requirement under the statute has been met.

### C. R.C. 709.023(E)(6)

{¶ 11} The essence of the question presented to this court is whether the statutory scheme for a type-2 annexation requires a municipality to offer any services to a territory in order for an annexation petition to satisfy R.C. 709.023(E)(6). To answer this question, we must review and interpret the statutory language.

{¶ 12} When analyzing statutory language,

> our paramount concern in examining a statute is the legislature's intent in enacting the statute. *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. To discern that intent, we first consider the statutory language, reading all words and phrases in context and in accordance with the rules of grammar and common usage. *Id.* We give effect to the words the General Assembly has chosen,

---

[1] Relators argued in their complaint that the roadway at issue was a county road and annexation would not change the fact that maintenance and upkeep of the road would remain the county's responsibility and no segmentation issue will occur as a result of the annexation. County Council only addressed this issue in a footnote in its motion to dismiss.

and we may neither add to nor delete from the statutory language. *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 19. When the statutory language is unambiguous, we apply it as written without resorting to rules of statutory interpretation or considerations of public policy. *Zumwalde v. Madeira & Indian Hill Joint Fire Dist.*, 128 Ohio St.3d 492, 2011-Ohio-1603, 946 N.E.2d 748, ¶ 23-24, 26. In other words, our review "starts and stops" with the unambiguous statutory language. *Johnson v. Montgomery*, 151 Ohio St.3d 75, 2017-Ohio-7445, 86 N.E.3d 279, ¶ 15.

*Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, 179 N.E.3d 1169, ¶ 13.

{¶ 13} County Council argues that the plain and unambiguous statutory language requires that a municipality must agree to provide at least one service to the territory to satisfy this subsection. Relators argue that this subsection is satisfied when a municipality passes an ordinance that specifies that it will provide all, some, or no services to the territory considered for annexation.

{¶ 14} The pertinent language states: "The municipal corporation to which annexation is proposed has agreed to provide to the territory proposed for annexation the services specified in the relevant ordinance or resolution adopted under division (C) of this section." Where a municipality refuses to provide any services to the territory this subsection is not satisfied. A resolution or ordinance passed by a city that provides no services to the territory proposed for annexation is not an agreement to provide services to the territory. This is required by the plain language of the statute. When the General Assembly intends that a condition could be satisfied by some, or none, it uses the modifier "if any." *See e.g., State ex rel. Barney v. Union Cty. Bd. of Elections*, 159 Ohio St.3d 50, 2019-Ohio-4277, 147

N.E.3d 595, ¶ 27 ("R.C. 519.12(H) requires the petition to contain the full and correct title, 'if any.' The statute thus contemplates the possibility that an application will not have a title."). Subdivision (E)(6) does not include the modifier "if any" with the term services. If the legislature had intended this subsection would be satisfied even if a municipality refused to provide any services, it would have said so. This language is absent from the subsection, and this court may not read the language into it. This is also consistent with how the Supreme Court of Ohio has characterized this subsection — as one that requires the annexing municipality to offer services to the territory. *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, 97 N.E.3d 404, ¶ 31. This is also in keeping with how this subsection fits within the overall statutory process.

{¶ 15} R.C. 709.021(A) is the starting point for any of the expedited annexation procedures provided for by statute. It provides,

> When a petition signed by all of the owners of real estate in the unincorporated territory of a township proposed for annexation requests the annexation of that territory to a municipal corporation contiguous to that territory under one of the special procedures provided for annexation in sections 709.022, 709.023, and 709.024 of the Revised Code, the annexation proceedings shall be conducted under those sections to the exclusion of any other provisions of this chapter unless otherwise provided in this section or the special procedure section chosen.

{¶ 16} R.C. 709.021(C) goes on to list the other provisions of the Revised Code that apply to these expedited annexation procedures: "Except as otherwise provided in this section, only this section and sections 709.014, 709.015, *709.04*, 709.10, 709.11, 709.12, 709.192, 709.20, and 709.21 of the Revised Code apply to the

granting of an annexation described in this section." (Emphasis added.) R.C. 709.04 gives a municipality the ability to accept or reject a territory for annexation. After a county board of commissioners, or in the present case, County Council, delivers an affirmative decision on the annexation petition required by R.C. 709.023(G) and 709.033(C)(1) to the municipality,

> the auditor or clerk of that municipal corporation shall lay the resolution of the board granting the petition and the accompanying map or plat and petition before the legislative authority. The legislative authority, by resolution or ordinance, then *shall accept or reject the petition for annexation.* If the legislative authority fails to pass an ordinance or resolution accepting the petition for annexation within a period of one hundred twenty days after those documents are laid before it by the auditor or clerk, the petition for annexation shall be considered rejected by the legislative authority.

(Emphasis added.) R.C. 709.04.[2]

{¶ 17} Therefore, even for a type-2 annexation petition, a municipality may ultimately reject an annexation petition that has been granted by a county board of commissioners.[3] Within the statutory scheme, the requirement that a municipality

---

[2] R.C. 709.05 provides that if the annexation is rejected, "no further proceedings shall be had."

[3] The application of R.C. 709.04 to expedited annexation procedures is also supported by the legislative history:

> when a landowners' petition is filed that includes the signatures of all of the owners of real estate in the unincorporated territory proposed for annexation and that, in addition to meeting the requirements for a landowners' petition, includes a request that one of the three special procedures described in this portion of the analysis be applied in lieu of the regular statutory annexation procedures, then that special procedure generally applies. But, as with the regular statutory annexation procedures, before any annexation is complete, *the*

pass an ordinance specifying what services shall be provided requires the municipality to, in fact, provide services. Based on the statutory language employed, we find that the ordinance passed by the city of Berea in this case does not satisfy R.C. 709.023(E)(6). As such, County Council has no legal duty to grant relators' petition for annexation and relators are not entitled to a writ of mandamus.

{¶ 18} Relators argue to the contrary, relying on two cases from other appellate districts analyzed below. First, the Eleventh District Court of Appeals analyzed this subsection and held that a municipality does not have to agree to provide any services to a territory in order for the subsection to be satisfied. *State ex rel. Young v. Ducro*, 2020-Ohio-5471, 163 N.E.3d 1124 (11th Dist.). There, a very similar situation occurred where, by ordinance, a municipality determined that it would provide no services to a parcel that was the subject of a type-2 annexation proceeding. The county board of commissioners denied the annexation petition on similar grounds to County Council. The Eleventh District Court of Appeals granted a writ of mandamus directing the county board of commissioners to grant the petition for annexation. *Id.* at ¶ 52. The Eleventh District cited two main reasons for finding in favor of the landowners.

---

*legislative authority of the municipal corporation to which annexation is proposed must vote to accept the landowners' petition for annexation.* (Sec. 709.021(A), (B), and (C).)

(Emphasis added.) Am.Sub. S.B. 5, 149 Ohio Laws Pt. I, 621.

{¶ 19} First, after noting that it was matter of first impression, the court reasoned that there were situations in which a county board of commissioners would be required to grant a type-2 annexation even where the municipality failed to pass any ordinance. Pursuant to R.C. 709.023(C), a municipality has 20 days within which to pass an ordinance or resolution stating what services the municipality would provide to the territory. The municipality also has 25 days to pass an ordinance or resolution consenting or objecting to the proposed annexation. R.C. 709.023(D). Under this statute, if the municipality does not act within that time, its silence is deemed consent to the annexation. If the municipality does consent or does not pass an ordinance or resolution in time, then regardless of whether the municipality has agreed to provide any services, R.C. 709.023(D) still requires a board of county commissioners to approve the annexation.[4] *Young* at ¶ 41. In such a case, the municipality has not agreed to provide any services, yet granting the petition is still required. However, this characterization of the process ignores a municipality's ability to object to the annexation and to ultimately reject the annexation under R.C. 709.04. Where an objection occurs, R.C. 709.023(D) requires a county board of commissioners, or in this case, County Council, to exercise its discretion in reviewing the annexation petition for compliance with R.C.

[4] R.C. 709.023(D) provides in part that "[i]f the municipal corporation and each of those townships timely files an ordinance or resolution consenting to the proposed annexation, the board at its next regular session shall enter upon its journal a resolution granting the proposed annexation. * * * Failure of the municipal corporation * * * to timely file an ordinance or resolution * * * shall be deemed to constitute consent * * *."

709.023(E).  The same is not true where a municipality agrees to or does not object to the petition.

{¶ 20} Second, the *Young* Court also stated that it undertook a plain reading of R.C. 709.023(E)(6).  The court found that it did not have an explicit requirement that a municipality must agree to provide any services.  *Young* at ¶ 42.  However, the court's analysis eschewed how the subsection fit within the overall statutory scheme.

{¶ 21} Where a municipality refuses to provide any services to the territory, this subsection is not satisfied.  This subsection presumes that a municipality will provide at least one service.  The *Young* Court reasoned that R.C. 709.023(E)(7) had language where a requirement to provide services was used by the legislature and R.C. 709.023(E)(6) did not use similar language.  *Young*, 2020-Ohio-5471, 163 N.E.3d 1124, at ¶ 41-43.  But subsection (E)(7) is limited to a single issue regarding road maintenance and upkeep.  Subsection (E)(6) encompasses a broad range of possible services that a municipality could potentially provide.  The use of the mandatory language in subsection (E)(7) regarding a specific issue does not inform the meaning or legislative intent for subsection (E)(6).

{¶ 22} Further, even the *Young* decision, on which relators rely, recognized that the municipality has the authority to reject the annexation under R.C. 709.04.  *Id*. at ¶ 55.  This statutory provision has no restrictions on the reason a municipality may ultimately reject a petition to annex territory.

{¶ 23} The Second District Court of Appeals also analyzed the subsection in an original action in mandamus two years after *Young*.  *State ex rel. Tangeman v.*

*Mia. Cty. Bd. of Cty. Commrs.*, 2022-Ohio-3851, 199 N.E.3d 622 (2d Dist.). There, the parties agreed that an annexation petition satisfied all the requirements, with only R.C. 709.023(E)(6) in dispute. *Id.* at ¶ 10. The municipality in that case passed an ordinance stating that certain services would be provided, but these services did not include water or sewer. *Id.* at ¶ 4, 6. The board of county commissioners denied the petition citing as its reasoning that adequate water or sewer services could not be provided to the territory. *Id.* at ¶ 6. The *Tangeman* Court concluded that "R.C. 709.023(C) does not require a services resolution to require a municipality to provide any particular service to a territory proposed for type-2 annexation." *Id.* at ¶ 11. The court went on,

> the statute plainly states that a municipal corporation must agree to provide "what services," if any, are specified in the relevant ordinance or resolution to the territory proposed for annexation. In other words, the resolution may specify that a municipality will provide all, some, or perhaps none of its services to the annexed territory. If the municipality has approved a services resolution under R.C. 709.023(C), the condition in R.C. 709.023(E)(6) is satisfied.

*Id.* at ¶ 11. The court reasoned that the adequate provision of water and sewer services were practical considerations, not legal ones found within the statutory scheme. *Id.* at ¶ 13. However, this case does not address the situation where no services would be provided by the municipality. Therefore, it is distinguishable from the present case.

{¶ 24} Therefore, based on our reading of the statute and the overall statutory scheme, we determine that R.C. 709.023(E)(6) has not been satisfied and

County Council has no clear legal duty to grant the petition as relators allege. Relators complaint fails as a matter of law.

{¶ 25} County Council's motion to dismiss is granted. Relators' complaint for writ of mandamus is dismissed. Costs assessed against relators. The clerk is directed to serve on the parties notice of this judgment and its date of entry upon the journal. Civ.R. 58(B).

{¶ 26} Complaint dismissed.


_____
MARY J. BOYLE, JUDGE

ANITA LASTER MAYS, A.J., and
SEAN C. GALLAGHER, J., CONCUR